DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Alexander Ristich, appeals the decision of the Summit County Court of Common Pleas, which found him guilty of two counts of rape. This Court affirms.
 I. {¶ 2} Appellant was married to Michael Bowman's great-grandmother. Although not related by blood, Michael considered the appellant his grandfather. When Michael was between the ages of 5 and 6 years old, he spent a great deal of time at appellant's home.
 {¶ 3} In March of 2001, at the age of eleven, Michael sexually abused his younger brother. During the investigation of this incident, Michael told his stepfather and Annette Lucarelli, an intake social worker at Summit County Children Services, that appellant had inserted his penis into his butt. Ms. Lucarelli contacted the police. Michael was sent to a boys' farm for 17 months. During his treatment at the boys' farm, Michael told his counselor that appellant had given him baths during which appellant stroked Michael's genital areas. Michael also indicated that appellant had anally penetrated him while the two were in the shower.
 {¶ 4} Appellant was indicted by the Summit County Grand Jury for two counts of rape of a child less than thirteen, violations of R.C. 2907.02(A)(1); and two counts of gross sexual imposition, violations of R.C. 2907.05(A)(4). Appellant pled not guilty, and the matter was set for a jury trial.
 {¶ 5} Prior to the trial, the prosecution informed the defense that it intended to introduce evidence of similar acts at the trial. Defense counsel objected to the introduction of evidence of similar acts. On December 19, 2001, a hearing was held on the admissibility of the evidence of similar acts. The sole witness at the hearing was Jennifer Stackpole. Ms. Stackpole testified that the appellant had sexually molested her when she was between the ages of 5 and 10 years old, and penetrated her vagina on one occasion when she was approximately ten years old. At the time of the hearing, Ms. Stackpole was twenty-eight years old. The trial court ruled that the similar acts testimony of Ms. Stackpole would be admitted at trial.
 {¶ 6} At the initial trial, the jury was unable to reach a verdict and a mistrial was declared. A second jury trial was held and defendant was found guilty of all charges. The trial court sentenced appellant to a term of imprisonment of 5 to 25 years on each rape conviction and a term of imprisonment of two years on each conviction of gross sexual imposition. The court ordered that the sentences on all counts be served concurrently. On July 23, 2003, appellant was re-sentenced as to the charge of rape. Due to the fact that the jury found appellant guilty of rape of a minor under the age of thirteen and further found that force was used, pursuant to R.C. 2907.02(B), the trial court sentenced appellant to life imprisonment on the charge of rape as contained in counts one and two of supplement one to the indictment.
 {¶ 7} Appellant timely appealed and asserts error solely in relation to his rape convictions.
 II. ASSIGNMENT OF ERROR
"The trial court committed reversible error by permitting the similar acts testimony of jennifer stackpole."
 {¶ 8} In his sole assignment of error, appellant argues that the court erred in permitting the testimony of Jennifer Stackpole.
 {¶ 9} A trial court possesses broad discretion with respect to the admission of evidence. State v. Ditzler (Mar. 28, 2001), 9th Dist. No. 00CA007604, citing State v. Maurer (1984),15 Ohio St.3d 239, 265. An appellate court will not overturn the decision of a trial court regarding the admission or exclusion of evidence absent a clear abuse that has materially prejudiced the defendant. Ditzler, supra; see, also, State v. Ali, 9th Dist. No. 18841. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621, 1993-Ohio-122. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 10} Generally, evidence of prior criminal acts completely independent of the crime for which a defendant is being tried, is inadmissible. State v. Wilkins (1999), 135 Ohio App.3d 26, 29, citing State v. Thompson (1981), 66 Ohio St.2d 496, 497. However, an exception to this general rule exists, as provided for in R.C. 2945.59 and Evid.R. 404(B). Ali, supra. Evid. R. 404(B) provides that evidence of such crimes, wrongs or acts may be admissible for purposes other than proving the conformity of an accused with a certain character trait during the incident in question. Specifically, Evid.R. 404(B) provides the following:
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for otherpurposes, such as proof of motive, opportunity, intent,preparation, plan, knowledge, identity, or absence of mistake oraccident." (Emphasis added.)
 {¶ 11} R.C. 2945.59 provides:
"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior orsubsequent thereto, notwithstanding that such proof may show ortend to show the commission of another crime by the defendant." (Emphasis added.)
 {¶ 12} The statute and rule must be read in harmony with each other. Ali, supra, citing State v. Broom (1988),40 Ohio St.3d 277, 281. Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law regarding evidence of other acts, the standard for determining admissibility of such evidence is strict, and the statute section and rule must be construed against admissibility. Ali, supra, citing Broom,
40 Ohio St.3d at paragraph one of the syllabus. However, this strict admissibility standard must be considered contemporaneously with the fact that the trial court "occupies a `superior vantage' in determining the admissibility of evidence." Ali, supra, citingState v. Rutledge (Nov. 19, 1997), 9th Dist. No. 96CA006619.
 {¶ 13} The Supreme Court of Ohio has articulated two requirements for the admission of other acts evidence. Broom,40 Ohio St.3d at 282-83. First, substantial evidence must prove that the other acts were committed by the defendant as opposed to another person. Id. Second, the other acts evidence must fall within one of the theories of admissibility enumerated in Evid.R. 404(B). Id. See, also, State v. Lowe (1994), 69 Ohio St.3d 527,530, 1994-Ohio-345.
 {¶ 14} Proof of one of the purposes set forth in Evid.R. 404(B) must go to an issue which is material in proving the defendant's guilt for the crime at issue. State v. DePina
(1984), 21 Ohio App.3d 91, 92, citing State v. Burson (1974),38 Ohio St.2d 157, 158.
 {¶ 15} The Supreme Court of Ohio has held that evidence of other acts may be admitted into evidence when the evidence of other acts establishes a modus operandi, a "`unique, identifiable plan of criminal activity[,]'" that is applicable to the crime with which defendant is charged. Lowe, 69 Ohio St.3d at 531, quoting State v. Jamison (1990), 49 Ohio St.3d 182, syllabus. A certain modus operandi provides a "behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator." Lowe, 69 Ohio St.3d at 531.
 {¶ 16} In order to prove identity through a modus operandi, other acts evidence must be related to and share common features with the offense at issue. Id. When such evidence establishes an idiosyncratic pattern of criminal conduct, it is not necessary for the offense at issue to be near in time and place to the other acts introduced into evidence; "the probative value of such conduct lies in its peculiar character rather than its proximity to the event at issue." DePina, 21 Ohio App.3d at 92; see, also, State v. Lillie, 9th Dist. No. 15359. Furthermore, these other acts need not be the same or even similar to the offense in question, as long as they indicate a modus operandi attributable to the defendant. Lowe, 69 Ohio St.3d at 531, citing State v.Hutton (1990), 53 Ohio St.3d 36, 40.
 {¶ 17} Appellant argues that the admission of Ms. Stackpole's testimony was a violation of Evid.R. 404(B) because it was admitted to show appellant's disposition to commit a crime rather than to establish appellant's modus operandi. Appellant argues that the acts described in Ms. Stackpole's testimony were not similar enough to prove appellant's modus operandi because Ms. Stackpole's testimony involved acts that took place approximately 11-16 years before the underlying acts that led to this appeal. In addition, appellant argues that the acts Ms. Stackpole testified to are not similar enough to the acts in the present case to prove appellant's modus operandi because Ms. Stackpole and Michael are not the same gender, the activity occurred at different locations, and different forms of rape were alleged by the victims.
 {¶ 18} The State argues that Ms. Stackpole's testimony was properly allowed into evidence because it showed a distinct pattern of sexual conduct on behalf of appellant.
 {¶ 19} After reviewing the record, this Court finds that the testimony of Ms. Stackpole regarding appellant's prior sexual acts with her satisfies the Supreme Court's two prong test governing other acts evidence. See Broom,40 Ohio St.3d at 282-83. First, in her testimony, Ms. Stackpole identifies appellant as the person who committed unlawful sex acts against her as a child similar to the ones committed by appellant against the victim in the present case. See id. As to the second prong, the prior acts that Ms. Stackpole testified to prove a modus operandi applicable to appellant. See Lowe,69 Ohio St.3d at 531; see, also, R.C. 2945.59 and Evid.R. 404(B).
 {¶ 20} Michael Bowman testified on behalf of the State. Michael testified that between the ages of three and eight years old, he spent approximately three out of every four weekends at appellant's home. Michael testified that appellant bought him gifts, took him out to restaurants, and took him fishing. Michael testified that appellant told him that he was his favorite grandson and he loved him the most. Michael testified that when he was in grade school, appellant would visit him during lunch two to three times a week and bring him food from McDonald's. Michael testified that appellant told him that he loved Michael more than his parents did. Michael testified that between the ages of three and five years old, appellant would give him a bath when he spent the night at appellant's home. Michael testified that appellant anally penetrated him on at least two different occasions when they were taking a shower together. Michael further testified that while giving him a bath, appellant would stroke his penis in a sexual manner. Michael testified that when appellant molested him, he told him that that was how they showed their love for each other. Michael testified that after appellant molested him, appellant would take him shopping and get Michael almost anything he wanted. Michael testified that appellant would also tell Michael that he was his favorite after molesting him. Michael testified that appellant is his grandpa.[1]
 {¶ 21} Jennifer Stackpole also testified on behalf of the State. Ms. Stackpole testified that the first memory she has of appellant sexually molesting her occurred when she was approximately five years old. Ms. Stackpole testified that appellant continued to molest her sexually until she was approximately ten years old. Ms. Stackpole testified that many of the incidents took place at appellant's home. Ms. Stackpole testified that she considered appellant her grandfather because he was married to her grandmother.
 {¶ 22} Ms. Stackpole testified that appellant first molested her in her grandmother's bed when she was approximately five years old. The next incident Ms. Stackpole testified regarding was appellant's molesting her while giving her a bath. Ms. Stackpole testified that appellant would give her a bath every time she spent the night at his house. Ms. Stackpole testified that appellant would stick his finger in her anus and her vagina as he was bathing her. Ms. Stackpole testified that when she asked appellant why he was touching her in that manner, appellant told her that he was just showing her how much he loved her. Ms. Stackpole testified that appellant continued to molest her in various ways almost every time he saw her until she was approximately ten years old. In her testimony regarding specific incidents where appellant sexually molested her, Ms. Stackpole testified that appellant would characterize the sex acts as ways that they expressed their love to each other. Ms. Stackpole testified that appellant made her feel that he was the only one who loved her. Ms. Stackpole further testified that appellant repeatedly called her "his special little girl" and bought her presents.
 {¶ 23} Ms. Stackpole testified that when she was approximately ten years old, appellant vaginally raped her during a family holiday outing. Ms. Stackpole testified that she reported the rape to her mother immediately after it happened.
 {¶ 24} The evidence of these other acts clearly demonstrates a unique, identifiable plan of criminal activity that is applicable to appellant with respect to the incident in the present case. See Lowe, 69 Ohio St.3d at 531, quotingJamison, 49 Ohio St.3d at syllabus. Both Ms. Stackpole and Michael thought of appellant as their grandfather. Appellant told each of them that they were his favorite grandchild. Appellant lavished both victims with gifts. Appellant digitally penetrated Ms. Stackpole in the bathtub while bathing her, and he anally penetrated Michael while showering with him. Appellant convinced the victims that sexual activity was a way to express your love for another individual. Appellant suggests that these other acts are too far removed in time and are not similar to the incident in question. However, the fact that these incidents with Ms. Stackpole occurred 11-16 years before the incidents in the case sub judice, has no bearing on the admissibility of this evidence. The fact patterns presented by the other acts evidence are similar to the facts of the instant case, and establish a peculiar and unique pattern of activity. See State v. McAdory,
9th Dist. No. 21454, 2004-Ohio-1234 at ¶ 28; See, also, DePina,21 Ohio App.3d at 92.
 {¶ 25} Based upon the foregoing, this Court finds that the testimony of Ms. Stackpole regarding evidence of other acts was properly admitted as probative of the factors articulated in R.C.2945.59 and Evid.R. 404(B). Therefore, this Court cannot conclude that the trial court abused its discretion in admitting Ms. Stackpole's testimony. Accordingly, appellant's assignment of error is overruled.
 III. {¶ 26} The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Exceptions.
Batchelder, J., Whitmore, J., concur.
[1] This Court notes that appellant was actually Michael's great grandfather.