DECISION AND JOURNAL ENTRY
{¶ 1} This matter is before this Court on appeal by appellant, Scott A. Arnott, from his jury conviction in the Summit County Court of Common Pleas. For the following reasons, this Court affirms his conviction.
 I. {¶ 2} On August 18, 2003, appellant was indicted on seven counts, including three felonies and four misdemeanors, arising out of his relationship with Ellen Jones. The felony charges included two counts of burglary in violation of R.C. 2911.12(A)(1) and one count of menacing by stalking in violation of R.C. 2903.211(A). The misdemeanor charges included one count of assault in violation of R.C. 2903.13(A) and three counts of violating a protective order in violation of R.C. 2919.27.
 {¶ 3} Appellant was arraigned on August 25, 2003, and released on a $20,000.00, ten percent bond, requiring that he have no contact with Ms. Jones. Upon allegations that appellant had contact with Ms. Jones in violation of the restraining order, the trial court raised the bond to $500,000.00 and placed appellant on home incarceration. On October 23, 2003, the trial court denied appellant's motion requesting testing for diminished capacity. On November 25, 2003, a capias was issued for appellant's arrest when he failed to appear. His $500,000.00 bond was revoked.[1]
 {¶ 4} On January 29, 2004, the day the trial was scheduled to begin, appellant's counsel first informed the court that appellant had not been taking his medication while incarcerated prior to trial. Appellant's counsel expressed concern that appellant could not appreciate the reality of his situation because of his failure to take his medication. Defense counsel's concern arose from appellant's refusal to accept a plea agreement which would have permitted unopposed judicial release of appellant after six months. Defense counsel believed this agreement was in appellant's best interest.
 {¶ 5} Before the trial began, the trial court extensively questioned appellant. Appellant informed the court that he understood the nature of the proceedings against him, that his failure to take his medication did not affect his mental abilities, and that he felt it was in his best interest to have a jury determine the merits of the charges against him. The trial court found that there was no good faith basis to call appellant's competency into question at that time.
 {¶ 6} A jury trial began in this matter and appellant was convicted on three counts of violating a protective order, one count of burglary, and one count of menacing by stalking. The trial court sentenced appellant to seven years on the burglary charge, six months on each of the protective order charges and eighteen months on the menacing by stalking charge.
 {¶ 7} Appellant has appealed and has set forth three assignments of error.
 II. ASSIGNMENT OF ERROR I
"The court erred in refusing to grant the defense's request to have the defendant's competency evaluated prior to beginning the trial."
 {¶ 8} Prior to trial, defense counsel informed the trial court that appellant had not been taking four psychotropic medications while incarcerated in the Summit County jail. These medications were anti-depressant and anti-anxiety Court of Appeals of Ohio, Ninth Judicial District medications. Appellant had been taking them to control a diagnosed bi-polar disorder.
 {¶ 9} Defense counsel opined that appellant was not competent to stand trial. Defense counsel stated that he attempted to explain to appellant the possible defenses available and that appellant did not seem to grasp that information. Defense counsel and appellant both informed the court that appellant had a history of mental illness, including a hospital stay at the Cleveland Clinic for three weeks approximately ten years ago, a hospital stay at Akron General for a suicidal overdose, and a hospital stay at Akron General for electric shock therapy. Defense counsel stated that he witnessed appellant experiencing confusion, hypomania, impaired coordination, nervousness, nightmares and sensory disturbances like shock sensations.
 {¶ 10} The trial court then questioned appellant regarding his competency. Appellant stated that he was not depressed, that he understood everything his defense counsel told him, including the plea bargain he was refusing. He stated that he desired to go to trial before a jury, because he felt that the trial court would not give him a fair bench trial and he was not willing to put his welfare in the trial court's hands. He believed that a jury would be sympathetic to his case and might acquit him.
 {¶ 11} Appellant again stated that he is "more than mentally competent," and that the "[p]rescriptions don't have anything to do with anything." Appellant stated his belief that the facts would show that he did not harm Ms. Jones. He cited a number of facts in support of this statement.
 {¶ 12} Appellant also stated a correct understanding of the purpose of a jury trial, how a jury is picked, the purpose of voir dire, the function of his counsel and the role of the prosecutor and the court. Appellant also stated that no one was pressuring him into exercising his right to a jury trial. At the conclusion of the court's questioning of appellant, he was found competent and the jury trial began.
 {¶ 13} R.C. 2945.37(G) states that a criminal defendant is presumed competent.[2]
 {¶ 14} R.C. 2945.37(B) states when a court is required to provide a competency hearing:
"In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion."
 {¶ 15} In State v. Bock (1986), 28 Ohio St.3d 108, the Ohio Supreme Court held that if a defendant's competency to stand trial is raised prior to the trial, a competency hearing is required. The court also held that "the right to a hearing on the issue of incompetency rises to constitutional proportions only when the record contains sufficient indicia of incompetency * * * such that a formal inquiry into defendant's competency is necessary to protect his right to a fair trial." Id. at 110. If the record does not contain such indicia, then failure to hold such a hearing is not reversible error. Id.
 {¶ 16} In this case, the evidence in support of appellant's alleged incompetency is defense counsel's concerns regarding appellant's failure to take his psychotropic medications for anxiety and depression. Defense counsel believed that appellant's resulting mental state rendered him incapable of understanding the benefits of what his counsel believed was an advantageous plea agreement.
 {¶ 17} In State v. Thomas, 97 Ohio St. 3d 309, 2002-Ohio-6624, at ¶ 37, the Ohio Supreme Court held that objective indications such as specific references by defense counsel to irrational behavior on the part of the defendant is relevant in determining whether good cause was shown after the trial had begun. Likewise, in State v. Baker (Oct. 9, 1997), 3rd Dist. No. 15-97-02, the Third District held that counsel's statements regarding a defendant's competency could constitute a basis upon which to find good cause to hold a competency hearing.[3] Although Thomas andBaker addresses counsel's concerns about a defendant's competency after the trial had begun and, therefore, requires a good faith basis for holding a hearing, counsels' concerns before trial may conceivably constitute a part of the record that contains sufficient indicia of incompetency "such that a formal inquiry into defendant's competency is necessary to protect his right to a fair trial." Bock,28 Ohio St.3d at 110.
 {¶ 18} Defense counsel's concerns were in regard to whether appellant's failure to take his anti-anxiety and anti-depressant psychotropic medications rendered him incompetent. The mere fact that appellant was taking these medications does not necessarily render him incompetent. R.C. 2945.37(F) states:
"The court shall not find a defendant incompetent to stand trial solely because the defendant is receiving or has received treatment as a voluntary or involuntary mentally ill patient under Chapter 5122. or a voluntary or involuntary mentally retarded resident under Chapter 5123. of the Revised Code or because the defendant is receiving or has receivedpsychotropic drugs or other medication, even if the defendant might becomeincompetent to stand trial without the drugs or medication." (Emphasis added.)
 {¶ 19} In Bock, supra, the Ohio Supreme Court reiterated that, under R.C. 2945.37(A), incompetency is defined as the defendant's inability to understand the "nature and objective of the proceedings against him or of presently assisting in his defense." Id. at 110. In that case, the appellant was hospitalized for drugrelated problems. The Court held that incompetency is not the same as mere mental or emotional instability or even insanity. Id. It held that a defendant may be emotionally disturbed or even psychotic and yet still be competent. Id.
 {¶ 20} In Baker, supra, the defendant had disability status with the Social Security Administration and was treated for bipolar manic depression. The Third District held that a person is not incompetent to stand trial for the sole reason that he in on psychotropic drugs or other medication. The court relied upon R.C. 2945.37(F). It held that incompetency does not equate with mental or emotional instabilities. It held that a person who is inflicted with such ailments may still be able to understand the charges rendered and assist in the defense.
 {¶ 21} In Baker, the defendant participated at trial, testified on his behalf and was subject to cross-examination. Under these circumstances, the court found that the record failed to reveal sufficient indicia of incompetency.
 {¶ 22} Likewise, in State v. Linscott (Jan. 10, 2001), 9th Dist. Nos. 19947, this Court held that "[t]he presence of mental illness does not necessarily equate with incompetency." In Linscott, the defendant entered a plea of not guilty by reason of insanity. The trial court ordered an evaluation to determine his mental condition at the time of the offense as allowed by R.C. 2945.371(A). The evaluation diagnosed the defendant as suffering from a mental disorder. The defendant did not, however, specifically request a competency hearing. The defendant pled guilty to the charges and the trial court sentenced him.
 {¶ 23} On appeal, appellant argued that the trial court should have sua sponte conducted a hearing on the issue under R.C. 2945.37(B). This Court found that the trial court did not abuse its discretion in failing to order a competency evaluation.
 {¶ 24} This Court noted that appellant did not show anything in the record indicating that he was incompetent at the time he entered his plea and there was nothing in the record that would have indicated any reason to believe appellant was incompetent such that a hearing would have been necessary.
 {¶ 25} In the case at bar, this Court also finds that the trial court did not commit reversible error in failing to grant the defense counsel's request to have appellant evaluated prior to trial. The trial court inquired extensively of appellant regarding his understanding of the procedures, purposes and nature of the actions against him. The appellant gave cogent, cohesive and reasonable arguments regarding why he wanted to go to trial.[4]
 {¶ 26} Further, this Court has reviewed the entire transcript of the proceedings and cannot find any instances where appellant displayed conduct that would indicate incompetency.[5] Appellant's counsel cites a number of alleged "repeated outbursts" of appellant at the trial court's initial inquiry regarding appellant's competency. This Court has reviewed appellant's comments and cannot find that these comments indicated that appellant could not understand the nature of the proceedings. In this Court's view, these comments establish that appellant well understood what was going on. His comments were rational and explained to the court his beliefs about going to trial and the effects (and noneffects) that his failure to take his medication had on him.
 {¶ 27} In conclusion, there is nothing in the record upon which to base a finding that the trial court committed reversible error in failing to have appellant's competency evaluated prior to trial. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"The trial court erred by permitting the admission of evidence and argument about irrelevant and highly prejudicial "other acts" which appellant allegedly committed in the past that were not the subject of any pending charges thereby depriving appellant of his rights to due process of law."
 {¶ 28} Prior to trial, the prosecution moved the court to admit "other bad act" evidence in its case-in-chief against appellant. This other act evidence included appellant's violence toward his former wife and her counsel and violence against a deputy sheriff who had also witnessed appellant assault his mother. The trial court denied the motion to admit this other bad act evidence.
 {¶ 29} At trial, Ms. Jones made references to appellant's prior record.[6] The defense counsel objected, and the trial court sustained the objection. The court ordered that the comment be stricken from the record and instructed the jury to disregard the comment. Later, an officer testified regarding appellant's past violent acts and prior record. The defense counsel objected and the court sustained the objection.[7]
 {¶ 30} Further, Ms. Jones testified regarding several uncharged allegations against appellant: (1) that he followed her to Florida in violation of a restraining order prohibiting him from having any contact with her and also thereby violating his bond; (2) that he took her address book; (3) that he taped her phone conversations in the past without her consent; (4) and that he forced her to have sexual intercourse. Ms. Jones' daughter also made references to appellant "terrorizing" appellant and her family for years. Defense counsel objected to these references, but they were overruled.
 {¶ 31} The above-cited testimony is the alleged "other bad acts" references that appellant claims were improperly admitted.
 {¶ 32} Generally, evidence of other crimes or bad acts is not admissible. Evid.R. 404(A) states:
"Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to [certain] exceptions[.]"
 {¶ 33} Evidence of other crimes, wrong or acts in some instances are admissible. Evid.R. 404(B) states:
"Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 34} In this case, appellant alleges that he was materially prejudiced by the admission of evidence of other bad acts. The state argues that the evidence was properly admitted to show a pattern of conduct contemporaneous with the acts alleged in the indictment and to show appellant's intent to violate the restraining order.
 {¶ 35} A trial court's decision regarding the admission of evidence is reviewed under an abuse of discretion standard. State v. Ristich, 9th Dist. No. 21701, 2004-Ohio-3086, at ¶ 9, appeal denied103 Ohio St.3d 1494, 2004-Ohio-5605. In this case, this Court finds that the trial court did not abuse its discretion in admitting the other act evidence, because it related to appellant's plan or motive and explained the facts and circumstances surrounding appellant's course of conduct.
 {¶ 36} In State v. Curry (1975), 43 Ohio St.2d 66, 72-73, the Ohio Supreme Court held that other acts evidence is admissible to prove a "scheme, plan or system in doing an act." The court held that "scheme, plan or system" evidence is "`other acts' [that] form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment."[8] Id. at 73. The court further held that the evidence must concern events which are inextricably related to the alleged criminal act.[9] Id.
 {¶ 37} In Ristich at ¶ 11, this Court relied upon R.C. 2945.59 in finding that other act evidence could be admitted.[10] R.C 2945.59
provides:
"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous withor prior or subsequent thereto, notwithstanding that such proof may showor tend to show the commission of another crime by the defendant." (Emphasis added.)
 {¶ 38} This Court held that the statute and rule must be read in harmony with each other. Ristich at ¶ 12. Further, this Court held that because these rules "codify an exception to the common law regarding evidence of other acts, the standard for determining admissibility of such evidence is strict, and the statute section and rule must be construed against admissibility." Id. This Court nonetheless held that the strict admissibility standard must be considered "contemporaneously with the fact that the trial court `occupies a `superior vantage' in determining the admissibility of evidence.'" Id.
 {¶ 39} In the most factually similar case to the one at bar, State v.Halgrimson (Nov. 8, 2000), 9th Dist. No. 99CA007389, discretionary appeal not allowed, (2001), 91 Ohio St.3d 1471, appellant was charged with, inter alia, menacing by stalking. This Court stated that "`other acts evidence can be particularly useful in prosecutions for menacing by stalking because it can assist the jury in understanding that a defendant's otherwise innocent appearing acts, when put into the context of previous contacts he has had with the victim, may be knowing attempts to cause mental distress.'" Id., citing State v. Tichon (1995),102 Ohio App. 3d 758, 768.
 {¶ 40} In Halgrimson, the trial court permitted the introduction of "other act" evidence regarding appellant's attempts to contact his victim's friends. This Court concluded that such evidence was admissible, because it showed a course of conduct relating to appellant's stalking of the victim and his ongoing course of conduct.[11]
 {¶ 41} In the case at bar, all the other acts relate to the offenses charged. The fact that appellant followed the victim to Florida shows a pattern of stalking her in violation of the restraining order.[12] The forced sexual intercourse also relates to the stalking and menacing. Likewise, the fact that the victim's daughter also made references to appellant "terrorizing" appellant and her family for years relates to the stalking and menacing charges and also relate to the burglary charge.
 {¶ 42} The fact that appellant took the victim's address book and taped her phone conversations in the past without her consent relate to the offense of burglary, because appellant took these items during his burglary.
 {¶ 43} All these acts are inextricably related background information necessary to understand the charges and the appellant's course of conduct against Ms. Jones permitted by Evid.R. 404(B). As such, this Court finds that the trial court did not abuse its discretion in admitting such evidence.
 {¶ 44} Last, regarding inadvertent mention of appellant's prior record, the trial court sustained the objections to one such comment, ordered it to be stricken from the record, and instructed the jury to ignore such comment. With regard to the other comment by the officer, the court sustained the objection to the comment. The trial court properly ruled on these evidentiary matters.
 {¶ 45} Further, this Court finds that the incidental mention of appellant's prior record and acts of violence is harmless error. State v.Simmons, 9th Dist. No. 21150, 2003-Ohio-721.[13] Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"The appellant's rights to due process and a fair trial are violated when the prosecution engages in misconduct that tainted the entire proceedings."
 {¶ 46} In this assignment of error, appellant argues that the prosecutor engaged in misconduct, because she persisted in attempting to admit "other bad acts" evidence that tended to show that appellant was a bad person. In regard to appellant's second assignment of error, this Court concluded that the trial court did not err in admitting other acts evidence. Consequently, this cannot provide a basis for allegations of prosecutorial misconduct.[14]
 {¶ 47} Appellant also alleges that the prosecutor should not have continued to prosecute the case, because her husband represented appellant's ex-wife and appellant allegedly threatened him.
 {¶ 48} In cases alleging prosecutorial misconduct, this Court must "bear in mind that the `touchstone of due-process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.'" State v. Ditzler (Mar. 28, 2001), 9th Dist. No. 00CA007604, at ¶ 20, citing State v. Hill (1996),75 Ohio St.3d 195, 203. Prosecutorial misconduct is not a ground for reversal unless the appellant was denied a fair trial. Id. Appellant must prove that the prosecutor's comments were improper and prejudicially affected his substantial rights. Id.
 {¶ 49} In this case, there is no evidence that appellant's substantial rights were prejudiced in any way. The trial court refused to admit evidence regarding appellant's conduct toward his ex-wife or the deputy sheriff. Further, any inadvertent mention of appellant's prior record was made by witnesses, not the prosecution, and the trial court sustained the objections to such comments. This Court has also found that any inadvertent mention of appellant's prior record was harmless error. Last, the fact that the prosecutor did not disclose that her husband represented appellant's ex-wife and that he threatened the husband has nothing to do with prejudice to the appellant. He was given a fair trial. Appellant's third assignment of error is overruled.
 III. {¶ 50} This Court finds that the trial court did not abuse its discretion in any of the errors appellant had assigned. The conduct of the appellant's trial was in all respects proper. The appellant's assignments of error are overruled and appellant's conviction is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Exceptions.
Batchelder, J. Boyle, J. concur.
[1] Later, all but $1,000.00 was remitted.
[2] R.C. 2945.37(G) states: "A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code."
[3] See, also, State v. Chapin (1981), 67 Ohio St.2d 437, paragraph one of the syllabus. ("An unqualified suggestion of defendant's incompetency to stand trial by defense counsel during trial without additional objective indications such as, but not limited to, supplemental medical reports, defendant's conduct at trial or specific reference to defendant's irrational behavior or the like does not meet the `good cause shown' standard of R.C. 2945.37.")
[4] One of the primary reasons appellant wanted to go to trial was his belief that a jury might acquit him. This Court cannot find appellant's position unreasonable in wanting to present his case to his peers.
[5] Appellant did not testify at trial. His sole comments were in response to the trial court's questioning regarding his competency before trial began.
[6] The victim stated: "See, the more I did, the more upset he got, so he kept saying that I was just making it worse for him and making all these reports, and that he had had a record before, and it is just . . ."
[7] The officer stated: "I had, based upon my research using our in-house computer system, as well as the Summit County Jail system, I was made aware of violent acts involving this . . ."
[8] In Curry, the defendant was accused of rape. The state introduced evidence that the defendant had previously molested a young girl. On appeal, the Ohio Supreme Court held that the introduction of such evidence was not justified to prove absence of mistake or accident. It found that the evidence was not introduced to prove a scheme, plan, or system in doing an act because the two accusations were chronologically and factually separate occurrences.
[9] See, also, State v. Nixon (Apr. 25, 2001), 9th Dist. Nos. 00CA007638 and 00CA007624, appeal denied (2002), 94 Ohio St.3d 1471. (This Court held that that the state need only show that "`the contested evidence [is] inextricably intertwined [with what occurred] and, thus, necessary to give [a] complete picture of what occurred.'" Id., citingState v. Wilkinson (1980), 64 Ohio St.2d 308, 318); State v. Thompson
(1981), 66 Ohio St.2d 496, 498. (The Ohio Supreme court held that evidence is admissible "where the challenged evidence plays an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime.").
[10] In Ristich, the defendant was accused of raping his grandson. Prior to trial, the prosecution indicated its intent to introduce evidence of similar offenses. It planned to introduce the testimony of a girl who claimed defendant had sexually assaulted her 16 years earlier. This Court found that the trial court did not abuse its discretion in admitting evidence of other acts which established a "fingerprint" of the defendant's activity. Id. at ¶ 24-25.
[11] See, also, State v. Steeg (Apr. 30, 1997), 9th Dist. No. 17930, discretionary appeal not allowed, (1997), 79 Ohio St.3d 1505. (Appellant's act of burning victim with a cigarette was inextricably related to the charged offenses of rape and gross sexual imposition and was necessary to give the jury the complete picture of what had occurred.)
[12] The trial court also properly gave a limiting instruction regarding appellant's flight to Florida and his failure to appear at court for violating his bond as evidence of appellant's consciousness of guilt.
[13] In Simmons, this Court stated that in a harmless error inquiry, the Court must determine whether there was a reasonable probability that the evidence may have contributed to the conviction. An error will be overlooked where the evidence presented comprises overwhelming proof of guilt. Where there is no reasonable possibility that the improper evidence contributed to the conviction, the error is harmless.
[14] Appellant also claims that the prosecutor engaged in prejudicial conduct such as having improper contact with a juror and leaving a temporary protective order on an overhead projector after being told to remove it. These are matters which are dehors the record and cannot be considered on appeal. State v. Cunningham, 3rd Dist. No. 1-04-19,2004-Ohio-5892.