___

### In re T.L.

[Cite as *In re T.L.*, 186 Ohio App.3d 42, 2010-Ohio-402.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 09CA0018–M.

Decided Feb. 8, 2010.

Kevin J. Baxter, Special Prosecutor, and Mary Ann Barylski and Nicholas J. Smith, Special Assistant Prosecutors, for appellee, the state of Ohio.

Timothy Young, Ohio Public Defender, and Elizabeth R. Miller, Assistant Public Defender, for appellant, T.L.

CARR, Judge.

{¶ 1} Appellant, T.L., appeals the judgment of the Medina County Court of Common Pleas, Juvenile Division, which adjudicated him delinquent and committed him to the custody of the Ohio Department of Youth Services ("DYS"). This court affirms in part and vacates in part.

I

{¶ 2} A complaint was filed on August 4, 2008, charging T.L. (date of birth June 25, 1992) with one count of rape of a child under 13 years of age in violation

of R.C. 2907.02(A)(1)(b), a felony of the first degree if committed by an adult. The alleged victim, A.R., was five years old at the time of the incident. T.L. denied the charge.

{¶ 3} On August 26, 2008, the state moved the juvenile court to conduct a hearing to determine whether the minor victim was competent to testify at T.L.'s adjudicatory hearing. After a voir dire examination of the victim, the juvenile court determined that A.R. was not competent to testify as a witness. On September 4, 2008, defense counsel moved for a competency evaluation of T.L. to determine the juvenile's competency to stand trial and participate in his own defense. After reviewing the appointed psychologist's evaluation report and offering the parties the opportunity to supplement the report with other documents or witnesses, the juvenile court found T.L. competent to stand trial and participate in his own defense. The matter was scheduled for an adjudicatory hearing.

{¶ 4} On November 28, 2008, the juvenile filed a motion in limine to exclude all hearsay statements by the victim. The state responded in opposition. On January 15, 2009, the juvenile court ordered that the child victim's statements were not admissible pursuant to Evid.R. 803(2) or 807. The trial court ordered that the victim's statements may, however, be admissible pursuant to other exceptions to the hearsay rule.

{¶ 5} On December 3, 2008, the state moved to amend the complaint to add a second count. The juvenile court granted the motion to amend the complaint to include one count of gross sexual imposition against a child under 13 years old in violation of R.C. 2907.05(A)(4), a felony of the third degree if committed by an adult.

{¶ 6} The matter proceeded to adjudication. The juvenile court found T.L. delinquent by reason of rape and gross sexual imposition. At disposition, the juvenile court ordered that T.L. be committed to DYS for a minimum of one year, up to the age of 21, on the charge of rape; and for a minimum of six months, up to the age of 21, on the charge of gross sexual imposition, with the commitments to run concurrently. T.L. filed a timely appeal, raising four assignments of error for review. Some assignments of error have been consolidated to facilitate review.

II

## ASSIGNMENT OF ERROR I

The trial court violated T.L.'s constitutional right to confront witnesses when it admitted out-of-court statements made by a child to interviewers who were employed by a child advocacy center and working with law enforcement.

## ASSIGNMENT OF ERROR II

The trial court abused its discretion when it admitted a child's out-of-court statement pursuant to Evid.R. 803(4) because the statements were not made for purposes of medical diagnosis or treatment.

{¶ 7} The juvenile argues that the trial court erred by admitting statements made by the child to Jill Mearing, an intake social worker for Medina County Jobs and Family Services ("JFS"). This court disagrees.

{¶ 8} The Sixth Amendment to the United States Constitution affords a criminal defendant the right to be confronted with the witnesses against him. The United States Supreme Court has held that the admission of testimonial hearsay statements violates an accused's rights under the Sixth Amendment Confrontation Clause. *Crawford v. Washington* (2004), 541 U.S. 36, 68–69, 124 S.Ct. 1354, 158 L.Ed.2d 177 ("Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation"). *Crawford,* however, did not enunciate a comprehensive definition of "testimonial," stating only that "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177.

{¶ 9} The juvenile argues that the child victim's statements made to the social worker at the child advocacy center ("CAC") are testimonial because the social worker was working in concert with law enforcement for the primary purpose of police investigation and prosecution. The legislature, however, has provided for the creation of such CACs, which utilize multidisciplinary teams and establish protocols and procedures to address allegations of child abuse.

{¶ 10} Mearing testified that the protocols and procedures of the CAC were followed in this case. She explained that the CAC constitutes a collaboration between law enforcement, the prosecutor's office, the victim-assistance office, Cornerstone Psychological Services, and JFS to ensure that all the needs of an allegedly abused child are met. Mearing testified that she interviewed A.R. to determine whether she needed any medical or psychological treatment or whether she otherwise needed protection.

{¶ 11} Detective Klopfenstein of the Brunswick Hills Police Department, the investigating officer in this case, testified that he did not interview the child. Moreover, while he observed Mearing's interview, he did not participate or ask any questions. After A.R. disclosed matters regarding the incident, Mearing excused herself to confer with another co-worker and arguably Detective. Klopfenstein about the need for additional questions. The trial court, however, admitted testimony and other evidence only from the taped interview of the child

victim up to the point at which Mearing excused herself from the interview. Accordingly, the trial court did not consider any hearsay statements by the child that she may have made after Mearing's consultation with law enforcement.

{¶ 12} The Ohio Supreme Court has held that the admission of a child-victim's hearsay statements made to a social worker, when such statements are made for the purpose of medical diagnosis and treatment, "d[oes] not offend the Confrontation Clause." *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, at ¶ 3. Accordingly, the issue is whether A.R.'s statements to Mearing were made for purposes of medical diagnosis or treatment rather than for some other purpose.

{¶ 13} A child's out-of-court statements may be admitted pursuant to Evid.R. 803(4) if they were made for purposes of medical diagnosis or treatment, even if the child has not been determined competent to testify. Id. at syllabus; *In re I.W.*, 9th Dist. Nos. 07CA0056 and 07CA0057, 2008-Ohio-2492, 2008 WL 2168628, at ¶ 9. Such statements are presumed to be reliable based upon the "professional-reliance factor," in other words because of the expertise of the professionals who examined the child victim. Id. at ¶ 14. In addition, we have recognized repeatedly that "statements made to social workers for the purpose of facilitating medical treatment are admissible under the medical exception to hearsay." Id. at ¶ 17, citing *In re A.R.*, 9th Dist. No. 22836, 2006-Ohio-1548, 2006 WL 825400, and *State v. Major*, 9th Dist. No. 21662, 2004-Ohio-1423, 2004 WL 573927. To determine the purpose of the child's statements, the trial court should consider, among other things, whether the questions to the child were leading or suggestive; whether there was some motive to fabricate, such as a pending "bitter custody battle"; whether the child understood the need to tell the truth during the interview; and whether the professional elicited the child's disclosure of abuse pursuant to proper protocol for interviewing a child alleging sexual abuse. Id. at ¶ 15, citing *Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, at ¶ 49.

{¶ 14} Moreover, the decision to admit or exclude evidence lies in the sound discretion of the trial court. *State v. Brown*, 9th Dist. No. 04CA008510, 2005-Ohio-2141, 2005 WL 1026699, at ¶ 4. This court, therefore, reviews the trial court's decision regarding the admission or exclusion of evidence under an abuse-of-discretion standard of review. *State v. Arnott*, 9th Dist. No. 21989, 2005-Ohio-3, 2005 WL 17870, at ¶ 35. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or uncon-scionable in its ruling. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State*

*Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. When applying the abuse-of-discretion standard, this court may not substitute its judgment for that of the trial court. Id.

{¶ 15} Mearing testified that although she had not been an intake social worker very long, she received 100 hours of training in her first year as a social worker and she is required to participate in 36 hours of training per year afterwards. She testified that she has also participated in forensic interview training called Beyond the Silence, a specialized training regarding how to interview victims to obtain the details of the abuse. She testified that she has worked on approximately 40 suspected sexual-assault cases as a JFS intake social worker. Mearing explained the CAC-interview protocol and testified that it was followed in this case. She testified that the purpose of her interview with any child victim is "to see if she needs any medical or psychological treatment or if she needs to be protected." Mearing testified that A.R. received a medical examination a few days later and that she referred the child for psychological services based on the child's disclosure of abuse.

{¶ 16} Mearing testified that she had A.R. complete a body map, on which she identified parts of the body by her own terms. She testified that her Beyond the Silence training taught her how to use a body map when interviewing young children. Mearing testified that she was also trained to question young victims without the use of leading questions. While she admitted that she had asked A.R. a couple of leading questions, the taped interview demonstrates that the majority of Mearing's questions were not leading or otherwise suggestive.

{¶ 17} The trial court admitted A.R.'s hearsay statements through Mearing's testimony under the exception for statements made for the purpose of medical diagnosis or treatment pursuant to Evid.R. 803(4). Mearing testified regarding her experience and training as an intake social worker who interviews child victims of sexual abuse. She testified that she complied with CAC protocol during her interview of the child. She explained that one of the two primary purposes of her interviews at CAC is to determine the need for medical or psychological treatment for the child. Accordingly, her interview served the purpose of facilitating medical treatment. The child, in fact, subsequently obtained both a medical examination and counseling. Under these circumstances, this court concludes that the trial court did not abuse its discretion by admitting the child victim's hearsay statements pursuant to Evid.R. 803(4). Moreover, such statements do not violate the Confrontation Clause. T.L.'s first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR III

The trial court violated T.L.'s right to due process under the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section

16 of the Ohio Constitution, and [Juv.R.] 29(E)(4) when it adjudicated him delinquent of rape absent proof of every element of the charge against him by sufficient, competent, and credible evidence.

{¶ 18} T.L. argues that his adjudication as a delinquent child by reason of rape is not supported by sufficient evidence. This court disagrees.

{¶ 19} When considering this issue, this court applies the same standard of review as that applied in an adult criminal context. *In re J.F.*, 9th Dist. No. 24490, 2009-Ohio-1867, 2009 WL 1067048, at ¶ 12.

{¶ 20} The law is well settled:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Galloway* (Jan. 31, 2001), 9th Dist. No. 19752, 2001 WL 81257, *3. The test for sufficiency requires a determination whether the state has met its burden of production at trial. *State v. Walker* (Dec. 12, 2001), 9th Dist. No. 20559, 2001-Ohio-1940, 2001 WL 1581570; see also *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541.

{¶ 21} T.L. was charged with rape in violation of R.C. 2907.02(A)(1)(b), which states:

No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

R.C. 2907.01(A) defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body, instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however, slight, is sufficient to complete vaginal or anal intercourse." Moreover, this court recently held that "insertion, however slight, of a part of the body or other object within the vulva or labia is sufficient to prove vaginal penetration for purposes of proving sexual conduct as defined in R.C. 2907.01(A) and rape in violation of R.C. 2907.02." *State v. Melendez*, 9th Dist. No. 08CA009477, 2009-Ohio-4425, 2009 WL 2708124, at ¶ 14.

{¶ 22} T.L.'s mother, C.Z., testified at the adjudicatory hearing that A.R. and her father came to visit in April or May 2008. C.Z. testified that T.L. and A.R. had been unsupervised while playing together in T.L.'s room, when A.R. exited

the room crying and "a little upset." C.Z. admitted that she told A.R.'s father that she did not always trust T.L. around younger children because he was experiencing drastic mood swings as a result of an adjustment to his medication. C.Z. testified that T.L. had difficulty relating to others, lacked empathy, and was sometimes mean.

{¶ 23} Detective Klopfenstein testified that a report made to the police department stated that while T.L. and A.R. were playing together, T.L. pulled down his pants to "show his butt and his wiener, and then also placed his finger in [A.R.'s] wiener." The detective testified that he made a referral to JFS based on the police report regarding an incident between T.L. and A.R. He testified that he spoke with A.R.'s parents but that he did not interview the child victim.

{¶ 24} Mearing testified that she interviewed A.R. in June 2008. She testified that based on her experience and training, it is not unusual for victims of sexual abuse to wait some time before disclosing the abuse. She testified that the time of disclosure depends on the child victim's age, the trauma endured, and how comfortable the child is with the person to whom she discloses.

{¶ 25} Mearing testified that she had A.R. identify body parts on a body map. She testified that she discussed the concepts of inside and outside, using an ear as an example. She testified that A.R. then disclosed that she and T.L. were playing hide-and-seek, and he told her to sit on his parents' bed. Mearing testified that A.R. disclosed that T.L. touched her "pee-pee with his fingers," under her underwear, and inside her "pee-pee."

{¶ 26} Karen Fitzgerald, nurse practitioner for CAC, testified that she performed a physical examination of A.R. in July 2008, when the child was five and a half years old. She testified that she sent the medical-examination record and digital images of the child to Dr. Steiner at Akron Children's Hospital. She identified Dr. Steiner as her collaborative physician. Fitzgerald testified that Dr. Steiner issued a report consistent with her own findings, specifically that there was no evidence of penetrating trauma, bruising, scars, or lesions. She testified, however, that those findings were consistent with the reported history she had received that the child had been "fondled." Fitzgerald testified that she did not discuss the allegations of sexual abuse with the victim.

{¶ 27} Fitzgerald testified that it "can take days, weeks, months, and in some cases years" for a child to disclose an incident of sexual abuse. She testified that children cannot abstract beyond their own experiences and, therefore, may not even recognize certain incidents as abuse.

{¶ 28} The victim's mother, L.S., testified that A.R. was born on November 15, 2002. She testified that A.R. had visitation with her father in April and May 2008. L.S. testified that the child became "very clingy and whiny" in May 2008

and began crying in her sleep. L.S. testified that a neighbor told her in June 2008 that A.R. had told the neighbor's young daughter that A.R. went with her father to visit friends and that the friends' son showed her his "wiener." L.S. testified that A.R. agreed to talk to her about the incident in the neighbor's closet where she felt safe. L.S. testified that A.R. identified T.L. as the perpetrator.

{¶ 29} The victim's father, M.R., testified that he brought A.R. with him to visit T.L.'s family on numerous occasions, including during April or May 2008. He testified that they left after A.R. became upset and began clinging to him after playing alone with T.L. for 15 to 30 minutes. M.R. testified that L.S. called him regarding allegations that A.R. had made regarding a sexual assault. M.R. testified that he told the victim's mother to get more information and details from the child. M.R. testified that T.L. was the only boy with whom A.R. had contact during their visitations. He testified that A.R. has been more "clingy" since the incident.

{¶ 30} Sharon Yarnell, a social worker and therapist at Cornerstone Psychological Services, testified that she concentrates her practice in the area of sexual abuse. The trial court qualified her as an expert in regard to child sexual-abuse diagnosis and treatment. She testified that she received a referral regarding A.R. and that she has met with the child ten times and her mother once.

{¶ 31} Yarnell described various symptoms indicating sexual abuse, including differences in sleep, play, and eating patterns; changes in mood; anxiety; depression; nightmares; and intrusive thinking. She testified that she administered the SPPI, a diagnostic interview tool, to A.R., who responded that she has talked to others about things that bother her and that T.L. is someone who bothers her because he touched her "pee-pee," and she was scared. Yarnell testified that she went over body parts with A.R. in a "touching book." She testified that she discussed good and bad touches with A.R., who indicated that hugs and kisses are good touches. She testified that A.R. circled the genital area in red in the touching book and told her, "[T.L.] touched me here. He put his finger in my pants. * * * It hurt." Yarnell testified that A.R. consistently identified T.L. as the perpetrator and maintained that T.L. touched her "outside," rather than "inside" her body. She conceded, however, that she did not discuss the meaning of "outside" versus "inside" with the child victim.

{¶ 32} Yarnell testified that she took a narrative of the incident from the child victim's perspective. She testified that A.R. reported the incident as follows. A.R. went to T.L.'s home with her father. A.R. and T.L. were playing hide-and-seek. When A.R. went to find T.L., he grabbed her, held her hands, put his hand inside her underpants, and touched her "pee-pee," which hurt.

{¶ 33} Yarnell testified that A.R.'s biggest issue has been ongoing nightmares, and the child has shown signs of depression and anxiety. She testified that she

diagnosed A.R. with an adjustment disorder with mixed emotions. She explained that this diagnosis results from a stressor resulting in a change in the patient's mood. Yarnell identified the incident with T.L. as such a stressor, although she identified some tension in the home and the child's starting kindergarten as additional stressors.

{¶ 34} Based on the evidence presented at the adjudicatory hearing, this court concludes that there was sufficient evidence, when construed in a light most favorable to the prosecution, to convince an average person that T.L. committed rape. Two social workers testified regarding five-year-old A.R.'s disclosure that T.L. placed his finger inside her underwear and touched her "pee-pee," the word the child victim used to describe her genital area. One social worker testified that the child disclosed that T.L. touched her inside her body. T.L.'s third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

The trial court violated T.L.'s right to due process when it adjudicated him delinquent of rape and gross sexual imposition when those findings were against the manifest weight of the evidence.

{¶ 35} T.L. argues that his adjudication as a delinquent child by reason of both rape and gross sexual imposition is against the manifest weight of the evidence. The juvenile's argument is well taken in part and rejected in part.

{¶ 36} When considering whether a juvenile's adjudication is against the manifest weight of the evidence, this court applies the same standard of review as that applied in an adult criminal context. *In re J.F.*, 2009-Ohio-1867, 2009 WL 1067048, at ¶ 12.

{¶ 37} A review of the sufficiency of the state's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley* (Mar. 15, 2000), 9th Dist. No. 19600, 2000 WL 277908. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing *State v. Thompkins*, 78 Ohio St.3d at 390, 678 N.E.2d 541 (Cook J., concurring).

{¶ 38} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this court to view the evidence in the light most favorable to the state to determine whether the state has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, 2004 WL 573895, at ¶ 11.

[A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. Id.

*State v. Tucker*, 9th Dist. No. 06CA0035–M, 2006-Ohio-6914, 2006 WL 3783511, at ¶ 5. This discretionary power should be exercised only in exceptional cases when the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

*Rape*

{¶ 39} T.L. was adjudicated delinquent by reason of rape in violation of R.C. 2907.02(A)(1)(b), the elements of which are set out above.

{¶ 40} Although there was some conflicting evidence in this case, this court will not disturb the trial court's factual determinations because the trier of fact is in the best position to determine the credibility of the witnesses during trial. *State v. Crowe*, 9th Dist. No. 04CA0098–M, 2005-Ohio-4082, 2005 WL 1876010, at ¶ 22. In addition, this court will not overturn the trial court's verdict on a manifest-weight-of-the-evidence challenge on the ground that the trier of fact chose to believe certain witnesses' testimony over the testimony of others. Id.

{¶ 41} A review of the record indicates that this is not the exceptional case in which the evidence weighs heavily in favor of T.L. A thorough review of the record compels this court to find no indication that the trial court lost its way and committed a manifest miscarriage of justice in adjudicating T.L. delinquent by reason of rape. The weight of the evidence supports the conclusion that T.L. placed his finger inside the five-year-old victim's underwear and touched her in her genital area. The evidence indicates that A.R. reported to several people that T.L. put his finger inside her body and that the touching hurt her. There was evidence that the victim exhibited various symptoms of sexual abuse, including nightmares, anxiety, and depression. The weight of the evidence supports the conclusion that T.L. inserted his finger at a minimum within A.R.'s vulva or labia. See *Melendez*, 2009-Ohio-4425, 2009 WL 2708124, at ¶ 14.

Accordingly, T.L.'s adjudication as a delinquent child by reason of rape is not against the manifest weight of the evidence.

*Gross Sexual Imposition*

 {¶ 42} T.L. was also adjudicated delinquent by reason of gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree if committed by an adult. R.C. 2907.05(A)(4) states:

> No person shall have sexual contact with another, not the spouse of the offender, * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person.

R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶ 43} A review of the record indicates that this is not the exceptional case in which the evidence weighs heavily in favor of T.L. A thorough review of the record compels this court to find no indication that the trial court lost its way and committed a manifest miscarriage of justice in adjudicating T.L. delinquent by reason of gross sexual imposition. The weight of the evidence supports the conclusion that T.L. placed his finger inside the five-year-old victim's underwear and touched her in her pubic region.

*Plain Error*

 {¶ 44} The fourth assignment of error raises an issue this court must address as plain error. This court generally does not consider plain error unless raised by the appellant. However, the Supreme Court recently held that imposition of sentences on allied offenses of similar import is plain error. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, at ¶ 30. The Supreme Court has also held that "[g]ross sexual imposition, R.C. 2907.05(A)(4), is a lesser included offense of rape, R.C. 2907.02(A)(1)(b)." *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, at ¶ 83. The court and prosecution recognized this prior to disposition when the following exchange took place:

> THE COURT: The matter shall be reset for disposition. The gross sexual imposition appears to be a lesser included offense of the rape charge. Is that the state's position?

> MR. SMITH: Yes, your Honor.

{¶ 45} Based on this exchange and the Supreme Court's conclusion that the offenses of rape and gross sexual imposition are allied offenses of similar import, the juvenile court committed plain error by imposing a disposition on the allied

offenses of similar import. See *Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, at ¶ 30.

{¶ 46} T.L.'s fourth assignment of error is overruled. However, because the trial court committed plain error in imposing disposition on allied offenses of similar import, the disposition is vacated, and the matter is remanded for the prosecution to elect which allied offense it will pursue at the resentencing hearing. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, paragraph two of the syllabus.

## III

{¶ 47} T.L.'s first, second, third, and fourth assignments of error are overruled. Because of the plain error in imposing disposition on allied offenses of similar import, the disposition is vacated. The judgment of the Medina County Court of Common Pleas, Juvenile Division, is affirmed in part and vacated in part, and the cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part
and vacated in part,
and cause remanded.

MOORE, P.J., and WHITMORE, J., concur.