[Cite as *State v. Boles*, 2013-Ohio-5202.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

STATE OF OHIO,                                    :

    Plaintiff-Appellee,                      :         CASE NO.   CA2012-06-012

                                                 :              O P I N I O N
- vs -                                                           11/25/2013

                                                 :

PATRICK D. BOLES,                              :

    Defendant-Appellant.                     :


CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. 2011-2149


Jessica Little, Brown County Prosecuting Attorney, Mary McMullen, 200 East Cherry Street, Georgetown, Ohio 45121, for plaintiff-appellee

Shawn P. Hooks, 131 North Ludlow, Suite 630, Dayton, Ohio 45402, for defendant-appellant


**HENDRICKSON, P.J.**

{¶ 1}   Defendant-appellant, Patrick Boles, appeals his conviction in the Brown County Court of Common Pleas of four counts of rape.  For the reasons detailed below, we affirm the decision of the trial court.

{¶ 2}   On July 7, 2011, appellant was indicted on eight counts of rape in violation of R.C. 2907.02(A)(1)(b).  The indictment alleged eight separate instances of sexual conduct between appellant and the victim, D.L., four of which occurred in 1991 and the remaining four

occurred in 1992. D.L. was between the ages of 11 and 12 years old during the time of the allegations listed in the indictment.

{¶ 3} Appellant is the maternal uncle of D.L. At all times relevant to this appeal, D.L. was living with her parents at their residence in Higginsport, Ohio. Appellant would occasionally visit the family on weekends and would sometimes stay the night. D.L. stated that she had a good relationship with appellant when she was younger and considered him the "favorite uncle." Appellant would typically show D.L. a lot of attention when he visited. The two would often play games, watch cartoons, and play sports together. He would also buy her gifts, take her places, and even let her drive his automobile.

{¶ 4} At around the age of ten, D.L. testified that appellant began to exhibit more sexual and intimate behavior towards her. Conversations between the two became more adult and directed towards sex. D.L. testified that she knew where appellant hid his pornography in his automobile and that the two viewed pornography together. She also stated that she had observed him masturbating in her parents' bedroom with the door open on at least one occasion.

{¶ 5} The two also had more physical contact as their relationship progressed. D.L. testified that they would sit closer together during movies and engage in more physical wrestling. Later, appellant would sneak into D.L.'s room at night and caress her body while she lay in bed. According to D.L., the appellant began purchasing more expensive gifts for her as the relationship became more intimate. Appellant also began increasing the frequency of his visits with the family.

{¶ 6} Eventually, appellant and D.L. began engaging in sexual conduct. D.L. testified as to the details of multiple sexual acts that occurred at various locations in D.L.'s home, including her bedroom, the shower, her brother's bedroom, and the kitchen. D.L distinguished between various scenarios where the two had engaged in acts of fellatio,

cunnilingus, digital penetration, and vaginal intercourse during 1991. D.L. also testified as to four specific acts of fellatio, cunnilingus, digital penetration, and vaginal intercourse which occurred in 1992.

{¶ 7} The relationship between appellant and D.L. and her family abruptly ended in 1992 after a family dispute. Appellant never returned to the Higginsport address, nor does there appear to be any further allegations of sexual conduct with D.L. after that time.

{¶ 8} The record reflects that D.L. unsuccessfully attempted to report appellant's conduct over the years. D.L. testified that she first told her mother of the sexual abuse one or two years after the sexual conduct with appellant ended. She also told a high school teacher and attempted to inform a school counselor, but decided not to pursue the matter further. In 2011, D.L. contacted the Brown County Prosecutor's office which investigated the allegations and commenced the prosecution of this action in 2011.

{¶ 9} A five-day jury trial was held beginning on May 7, 2012. D.L testified about the sexual conduct between herself and appellant during 1991 and 1992. The state also introduced testimony from various family members regarding appellant's favorable treatment of D.L. over the relevant time period. In addition, the state introduced the testimony of Dr. Bassman who is an expert on sexual abuse. The state's theory of the case was that appellant had engaged in a process of grooming D.L. by manipulating her from a young age in order to elicit her cooperation in sexual conduct.

{¶ 10} The jury found appellant guilty of four counts of rape for the sexual conduct occurring in 1991, but acquitted him of the four counts of rape for the sexual conduct occurring in 1992. Appellant was subsequently sentenced to a prison term of five to 15 years on each rape conviction, with three of those convictions to be served consecutively for a total prison term of 15 to 45 years. Appellant now appeals his convictions, raising two assignments of error:

{¶ 11} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED PREJUDICIAL EVIDENCE TO BE ADMITTED AT TRIAL OVER THE DEFENDANT'S OBJECTION.

{¶ 12} THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION.

{¶ 13} Appellant argues in his first assignment of error that the trial court abused its discretion by permitting the introduction of evidence offered by three of the state's witnesses. Specifically, appellant argues the trial court erred when it allowed the testimonies of D.L.'s sister-in-law, D.L.'s brother, as well as the expert testimony offered by Dr. Bassman.

{¶ 14} We begin by noting that a trial court has broad discretion in the admission and exclusion of evidence. *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9. A reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. *State v. Smith*, 12th Dist. Fayette No. CA2007-10-035, 2008-Ohio-5931, ¶ 33. An abuse of discretion is more than an error of law or judgment, but instead connotes that "the trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8.

{¶ 15} Appellant's first objection relates to the testimony of Cynthia Hackworth-Rogers. Hackworth-Rogers is D.L.'s sister-in-law who stated that she observed appellant inappropriately tickling D.L. when D.L. would have been about eight or nine years old. Hackworth-Rogers testified that the situation was particularly shocking and embarrassing because "he was holding her directly on his lap, over his penis, and I remember being very shocked that that was appropriate for a man like that to be tickling this girl in this fashion." According to Hackworth-Rogers, this inappropriate tickling continued despite D.L.'s cries for appellant to stop touching her. The state argues that this testimony is consistent with a

pattern of grooming a young victim for sexual conduct and for asserting control over the victim.

{¶ 16} Appellant contends that this evidence is inadmissible because the conduct Hackworth-Rogers witnessed took place several years before any allegations of sexual conduct and because the evidence is prejudicial and could mislead the jury. The trial court overruled appellant's objection on the basis that the testimony was consistent with the state's theory of the case regarding the grooming of D.L. for sexual activity.

{¶ 17} In general, extrinsic acts may not be used to suggest that the accused has the propensity to act in a certain manner. *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, ¶ 18. Pursuant to Evid.R. 404(B): "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B); *Crotts*, at ¶ 18.

{¶ 18} Of particular relevance to the case at bar is R.C. 2945.59, which provides: "[i]n any criminal case in which the defendant's motive or intent * * * is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." *State v. Wightman*, 12th Dist. Fayette No. CA2006-12-045, 2008-Ohio-95, ¶ 25.

{¶ 19} Neither R.C. 2945.59 nor Evid.R. 404(B) "requires that the other act be 'like' or 'similar' to the crime charged, as long as the prior act tends to show one of the enumerated factors." *Id.* at ¶ 26. Since both R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they are both strictly

construed against allowing the state to submit "other acts" evidence. *Id.*; s*ee also State v. Ristich*, 9th Dist. Summit No. 21701, 2004-Ohio-3086, ¶ 12. However, if (1) an enumerated matter, such as intent, identity, or absence of mistake or accident, is a material issue at trial, and (2) the other acts evidence tends to show that matter by substantial proof, then the evidence of the other acts is admissible for that limited purpose. *Wightman*, at ¶ 26. *See also State v. Broom*, 40 Ohio St.3d 277, 281-282 (1988).

{¶ 20} The testimony of Hackworth-Rogers, which demonstrates a specific instance of grooming activity, was relevant to show appellant's motive and intent, and was therefore admissible under Evid.R. 404(B) and R.C. 2945.59. Hackworth-Rogers' testimony clearly links appellant to touching and tickling the victim, which Hackworth-Rogers observed to be inappropriate. The state introduced evidence indicating that gradual physical contact with a victim can be one method of furthering a plan of grooming. There is simply nothing inappropriate or unfairly prejudicial within the statements made by Hackworth-Rogers. Rather, the alleged conduct is consistent with a plan for grooming a child and for asserting control or dominance over a victim.

{¶ 21} Additionally, the testimony of Hackworth-Rogers is not objectionable on the basis that the tickling incident occurred years before any allegation of inappropriate sexual conduct. Merely because D.L. did not perceive any instance of grooming until years later does not mean that the evidence is inadmissible. *See State v. McAdory*, 9th Dist. Summit No. 21454, 2004-Ohio-1234, ¶ 18 ("[w]hen such evidence establishes an idiosyncratic pattern of criminal conduct, it is not necessary for the offense at issue to be near in time and place to the other acts introduced into evidence"). Accordingly, we find the trial court's decision to admit the testimony was not an abuse of discretion. The evidence relating to the tickling incident is relevant to appellant's plan in carrying out his sexual intentions with D.L.

{¶ 22} Appellant next argues the trial court improperly permitted the brother's

testimony, over appellant's objection, regarding an incident where D.L. showed pornography to her brother that was located in the back of appellant's automobile. Appellant contends that the pornography in his automobile was unconnected to anything that he knowingly shared with either of the children. He also argues that the pornography was irrelevant and highly prejudicial to his case. The state argues that the testimony is offered to corroborate D.L.'s testimony of appellant's grooming activities. The trial court overruled appellant's objection and permitted the testimony relating to the pornography in appellant's automobile.

{¶ 23} This objection implicates the same "other evidence" standard as appellant's prior objection. As noted above, pursuant to R.C. 2945.59 "other-acts evidence" may be introduced if the evidence "'tend[s] to show motive, plan, or intent.'" *Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, ¶ 18; *Wightman*, 12th Dist. Fayette No. CA2006-12-045, 2008-Ohio-95, ¶ 26. Testimony that a defendant showed a victim pornography has been held to be permissible, particularly when the testimony could indicate that a defendant used that pornography in the process of grooming the victim. *State v. Crotts*, 104 Ohio St.3d 432 (2004); *State v. Poling*, 11th Dist. Ashtabula No. 2008-A-0071, 2010-Ohio-1155; *State v. Short*, 1st Dist. Hamilton No. C-100552, 2011-Ohio-5245.

{¶ 24} At trial, the state offered evidence that pornography may be used by an offender in order to desensitize a child to sex and groom her for further sexual exploitation. D.L testified that she had been shown pornography and knew where appellant hid the pornography in his automobile. Her brother's testimony, recalling an event where D.L. showed him the pornography that was located in appellant's automobile, is relevant to show that D.L. knew where the pornography was hidden in appellant's automobile. As such, the testimony by D.L.'s brother is permissible because it relates to appellant's process of grooming D.L. by exposing her to sexually-oriented material. The brother's testimony also corroborates D.L.'s own testimony, which alleged that appellant showed her pornography and

they viewed it together. Accordingly, the trial court's decision to admit the evidence was proper and was not an abuse of discretion.

{¶ 25} Appellant's final objection regarding the admissibility of testimony offered by the state relates to a portion of the expert testimony offered by Dr. Bassman. In short, appellant suggests that a portion of Dr. Bassman's testimony regarding child grooming was improper based on the Ohio Supreme Court's decision in *State v. Boston*, 46 Ohio St.3d 108 (1989).

{¶ 26} Dr. Bassman was established by the state as an expert in sexual abuse. His testimony centered on the nature of grooming and the methods that are typically employed by sexual predators in order to groom a child. Dr. Bassman was declared an expert in sexual abuse by the trial court and was subsequently permitted to testify about grooming without objection from appellant. However, during Dr. Bassman's testimony, appellant objected to a statement relating to delayed reporting:

> [s]o, the bottom line is their motive is to trick the child, so that the child believes that they're giving permission. And, in so doing, the child will not speak up. So, in a very important psychological way, they are putting a handcuff, metaphorically speaking, on the child's ability to speak. I have had countless situations where parents would ask their child "Why didn't you speak up? Why didn't you say anything?" The child cries and says—
>
> Mr. Ring: Objection, Your Honor.
>
> A: --I just couldn't speak to you.

{¶ 27} Appellant acknowledges that evidence of grooming was properly admitted. Nevertheless, he argues the statement related to the delayed reporting of sexual abuse was improper because it was "bolstering evidence." The trial court overruled appellant's objection, reasoning that the testimony was related to grooming and its effects on children.

{¶ 28} Evid.R. 702 allows the admission of expert testimony where the witness' testimony relates to matters beyond the knowledge or experience of lay persons; the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education

regarding the subject matter of the testimony; and the witness' testimony is based on reliable scientific, technical, or other specialized information. *State v. Tillman*, 12th Dist. Butler No. CA2003-09-243, 2004-Ohio-6240, ¶ 17.

{¶ 29} In *State v. Boston*, 46 Ohio St.3d 108 (1989), syllabus, the Supreme Court of Ohio held that "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." *State v. Cripps*, 12th Dist. Preble No. CA97-12-031, 1998 WL 568683 (Sept. 8, 1998). *Boston* involved a defendant who was convicted of gross sexual imposition for alleged sexual contact with his two-year-old daughter. On appeal, the Ohio Supreme Court reversed the conviction, finding that the testimonies of two expert witnesses were improperly admitted over defendant's objections. The first expert witness testified that the victim had not fantasized her abuse and had not been programmed to make accusations against her father, effectively declaring that the victim was truthful in her statements. The second expert witness testified that, in her opinion, the victim was telling the truth. The Court reversed the conviction on the basis that such statements constituted improper "bolstering evidence" because "it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses." *Id.* at 129; *State v. Moreland*, 50 Ohio St. 3d 58 (1990), syllabus. Since those statements expressed the experts' own opinions as to the veracity of the victim, it was prejudicial error to admit the testimony.

{¶ 30} However, *Boston* does not exclude testimony that offers additional support for the truth of the facts testified to by the victim, or which assists the fact finder in assessing the victim's veracity. *State v. Stowers*, 81 Ohio St. 3d 260, 263 (1998). As this court has previously held, "[o]nly statements directly supporting the veracity of a child witness are prohibited under *Boston*." *State v. Cappadonia*, 12th Dist. Warren No. CA2008-11-138, 2011-Ohio-494, ¶ 18, quoting *State v. Cashin*, 10th Dist. Franklin No. 09AP-367, 2009-Ohio-

6419, ¶ 20. This distinction recognizes the reality that, "indirect bolstering of a victim's credibility is not the same as the direct rendering of an opinion as to a victim's veracity that was involved in *Boston*." *Id.*; *see also State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226 (expert testimony that victim's statements were "consistent with inappropriate sexual contact" was admissible and did not constitute improper vouching).

{¶ 31} The testimony offered by Dr. Bassman was relevant and did not constitute improper bolstering evidence. Dr. Bassman's testimony bears no resemblance to the type of bolstering evidence banned in *Boston*. Dr. Bassman's testimony was limited to the grooming process and its effects on children. His testimony regarding delayed reporting was based on his research of grooming, which explained the psychological impact that grooming may have on a child victim. He testified that many child victims have trouble speaking out about the sexual incidences, and may even delay reporting episodes of sexual conduct, because of the metaphorical "handcuff" placed on the child as a result of the manipulation. Dr. Bassman's testimony never vouched for the credibility of D.L. or engaged in any of the type of bolstering evidence prohibited by *Boston*. Thus, after reviewing the record, we find the trial court did not err in admitting this testimony.

{¶ 32} Since the trial court did not err in overruling each of appellant's three objections to the testimony of Hackworth-Rogers, D.L.'s brother, and Dr. Bassman, the first assignment of error is overruled.

{¶ 33} Under his second assignment of error, appellant argues the verdict is against the manifest weight of the evidence and there was insufficient evidence to sustain a conviction.

{¶ 34} The legal concepts of sufficiency of the evidence and weight of the evidence are separate and distinct. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines

the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Haney*, 12th Dist. Clermont No. CA2005-07-068, 2006-Ohio-3899, ¶ 14. In other words, the test for sufficiency requires a determination as to whether the state has met its burden of production at trial. *Wilson* at ¶ 34.

{¶ 35} To the contrary, a manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *Thompkins* at 387. In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Malott*, 12th Dist. Butler Nos. CA2007-02-006, CA2007-02-007, CA2007-02-008, 2008-Ohio-2114, ¶ 17. In such a review, an appellate court considers the credibility of the witnesses and the weight to be given the evidence. *Id.* "However, these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence presented." *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967). The discretionary power to overturn a conviction based on the manifest weight of the evidence is to be invoked only in those extraordinary circumstances to correct a manifest miscarriage of justice where the evidence presented weighs heavily in favor of acquittal. *Thompkins* at 387.

{¶ 36} "Because sufficiency is required to take a case to the jury, a finding that a

conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Malott* at 18; *Wilson* at ¶ 35. In that regard, we first examine whether appellant's convictions are supported by the manifest weight of the evidence.

{¶ 37} Appellant bases his argument on a lack of direct evidence necessary to sustain his convictions. In support, he emphasizes that there was no physical evidence to corroborate D.L.'s allegations and the only eyewitness account was the victim's own testimony, which he alleges was inconsistent. Appellant also notes that D.L. and her family are severely dysfunctional and points to problems with alcohol and mental illness.

{¶ 38} After reviewing the record, we find that appellant's convictions were supported by the weight of the evidence, and thus the evidence was sufficient to support a finding of guilt. Rape is defined under R.C. 2907.02(A)(1)(b) and provides "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age[.]" Sexual conduct includes, inter alia, vaginal intercourse, fellatio, cunnilingus, and digital penetration of the vagina. R.C. 2901.01(A).

{¶ 39} D.L. testified at length about the sexual conduct between herself and appellant. She authenticated her birth certificate and testified that she was 11 years old in 1991 and 12 years old in 1992. She testified that she was never married to appellant. D.L. testified as to four specific times in 1991 during which she and appellant engaged in separate acts of fellatio, cunnilingus, vaginal intercourse, and digital penetration of her vagina. She further testified as to four separate instances of sexual conduct in 1992, which included acts of fellatio, cunnilingus, vaginal intercourse, and digital penetration of her vagina. Additionally, the state offered a number of family witnesses who testified and corroborated many of D.L.'s observations. The state also introduced the expert testimony of Dr. Bassman who explained

the process of grooming and sexual abuse.

{¶ 40} Although there was no medical evidence introduced into the record, its absence is understandable considering the fact that the allegations stemmed from sexual conduct that went unreported for years and occurred more than 20 years before appellant was put on trial. Moreover, there is no requirement under Ohio law that a conviction for rape must be accompanied by medical evidence. *State v. Cripps*, 12th Dist. Preble No. CA97-12-031, 1998 WL 568683, *5 (Sept. 8, 1998); *State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, ¶ 58 (1st Dist.).

{¶ 41} Similarly, the fact that appellant was convicted of the 1991 rape charges, but not the rape charges in 1992, does not have any bearing on whether the verdict was against the manifest weight of the evidence in the present case. It is well-established that "inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Brown*, 12 Ohio St.3d 147, 149 (1984). "Each count in an indictment charges a distinct offense and is independent of all other counts; a jury's decision as to one count is independent of and unaffected by the jury's finding on another count." *State v. Davis*, 12th Dist. Butler No. CA2010-06-143, 2011-Ohio-2207, ¶ 37. As such, the jury could reasonably believe that appellant committed the rapes listed in the indictment for 1991, yet fail to find, beyond a reasonable doubt, that appellant committed the 1992 rapes.

{¶ 42} In light of the evidence presented, the jury did not clearly lose its way in concluding that appellant was guilty of four counts of rape. Appellant's convictions are not against the manifest weight of the evidence. Accordingly, we overrule appellant's second assignment of error.

{¶ 43} In conclusion, we overrule both of appellant's assignments of error and affirm the judgment of the Brown County Court of Common Pleas.

{¶ **44**}  Judgment affirmed.


S. POWELL and RINGLAND, JJ., concur.