[Cite as *State v. Grindstaff*, 2014-Ohio-2581.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO,                                :

    Plaintiff-Appellee,               :           CASE NO.   CA2013-09-074

                                              :           O P I N I O N
- vs -                                                          6/16/2014

                                              :

DONLEY K. GRINDSTAFF,              :

    Defendant-Appellant.            :

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2004 CR 00643

D. Vincent Faris, Clermont County Court of Common Pleas, Judith A. Brant, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

R. Daniel Hannon, Clermont County Public Defender, Robert F. Benintendi, 10 South Third Street, Batavia, Ohio 45103, for defendant-appellant

**HENDRICKSON, J.**

{¶ 1}   Defendant-appellant, Donley K. Grindstaff, appeals from his convictions in the Clermont County Court of Common Pleas for operating a vehicle while under the influence of alcohol (OVI) and driving under suspension.  For the reasons discussed below, we affirm Grindstaff's convictions.

{¶ 2}   Around 2:20 a.m. on June 22, 2003, Officer Ron Robinson with the Goshen

Township Police Department clocked a 1970 Ford truck traveling 57 m.p.h. in a 45 m.p.h. speed zone. When Robinson pulled behind the Ford, he noticed that its rear license plate light was not working. Robinson activated his overhead lights and the driver of the Ford pulled over into the parking lot of a nearby mobile home park. Upon approaching the vehicle, Robinson asked for the driver's license and registration. The driver identified himself as "Donley Grindstaff" and informed Robinson he did not have a license as it had been suspended. Grindstaff handed Robinson his state identification card, from which Robinson obtained Grindstaff's date of birth, social security number, and address.

{¶ 3} During this time, Robinson observed several signs of impairment. He asked Grindstaff to exit the vehicle and Robinson administered three field sobriety tests. Grindstaff was placed under arrest after he failed the horizontal gaze nystagmus (HGN) test, the one-leg stand test, and the walk and turn test. At the police station, Grindstaff refused to submit to a breath test. As a result of these events, Grindstaff was summoned to appear at the Clermont County Municipal Court on June 25, 2003 to face charges relating to a misdemeanor OVI, his refusal to submit to the breath test, driving under suspension, a speeding violation, and a license plate violation.

{¶ 4} On June 25, 2003, Grindstaff failed to appear in his municipal court case, and a bench warrant for his arrest was issued. The next day, on June 26, 2003, the state dismissed the OVI charge, informing the municipal court that the misdemeanor OVI had been refiled as a felony OVI. Subsequently, on August 25, 2004, Grindstaff was indicted in the common pleas court on one count of OVI in violation of R.C. 4511.19(A)(1), a felony of the third degree, and one count of driving under suspension in violation of R.C. 4507.02(D)(1), a misdemeanor of the first degree. With respect to the OVI count, the indictment specified that Grindstaff had a prior felony OVI conviction from September 2001, out of Warren County, Ohio. A warrant on the indictment was also issued on August 25, 2004.

{¶ 5} Although warrants had been issued in 2003 and 2004, Grindstaff was not arrested until March 2013. Bond was originally set at $100,000, but was later modified to $25,000 upon Grindstaff's uncontested motion to decrease bond. Grindstaff was released on bond on April 19, 2013.

{¶ 6} The case proceeded to a four-day jury trial in July 2013. At trial, the state called Robinson and Jeff Bradley, a corrections officer with the Clermont County Sheriff's Office, as witnesses. Robinson testified about the traffic stop he initiated on June 22, 2003. Robinson explained that in order to refresh his memory of the events that occurred ten years prior, he had reviewed his notes and the report he had created in June 2003. Robinson stated he had pulled Grindstaff over on June 22, 2003, for speeding and for failing to have a working rear license plate light. While trying to obtain Grindstaff's identification, Robinson observed signs of impairment. Specifically, Robinson testified Grindstaff's eyes were bloodshot and glassy and Grindstaff's breath smelled so strongly of an alcoholic beverage that Robison could smell the alcohol even though Grindstaff was chewing tobacco.

{¶ 7} Robinson further testified that Grindstaff failed all three field sobriety tests administered that morning. With respect to the HGN test, Robinson observed a lack of smooth pursuit in the movement of Grindstaff's eyes. Robinson explained that all six cues an officer looks for when utilizing the HGN test were present, which indicated that Grindstaff was impaired. He further explained that with respect to the one-leg stand test, Grindstaff was unable to stand still on one leg to the count of 30. Grindstaff repeatedly dropped the leg he was supposed to keep elevated and he kept swaying and moving his arms in an attempt to keep his balance. Robinson testified that Grindstaff also failed the walk and turn test as he was unable to stand as instructed by the officer, with his right foot directly in front of his left foot, and was unable to take nine heel-to-toe steps while balancing on a flat line. During the middle of the walk and turn test, Grindstaff informed Robinson that Grindstaff recently had

surgery on his ankle and was taking prescribed pain medication.

{¶ 8} Based on Robinson's observations and Grindstaff's failure to perform the three field sobriety tests properly, Robinson opined that Grindstaff was impaired and should not have been operating a motor vehicle. Robinson arrested Grindstaff and transported him to the police station. Once at the station, Robinson asked Grindstaff to take a breath test, but Grindstaff refused even though he had been informed that his refusal to take the test would result in a license suspension. Grindstaff told Robinson he previously had been advised by an attorney "not to take any tests." Grindstaff then executed a "2255 Form," indicating that he had been made aware of his rights and was refusing to take the breath test. The "2255 Form," which was entered into evidence, specifically advised Grindstaff that he could "at [his] own expense, have a physician, registered nurse, qualified technician or chemist of [his] choosing administer a chemical test or tests in addition to any administered at the direction of a police officer." Grindstaff did not have an independent chemical test performed.

{¶ 9} After Grindstaff's refusal to take the breath test, Robinson informed Grindstaff that he had been summoned to appear in municipal court on June 25, 2003. Robinson then transported Grindstaff to his home. Robinson testified that at this time he was unaware Grindstaff had a prior felony OVI conviction. Robinson later learned Grindstaff had been convicted in September 2001 of a fourth-degree felony OVI in the Warren County Court of Common Pleas, in Warren County, Ohio in Case No. 01CR19209, which had resulted in Grindstaff's license being suspended for four years. A certified copy of Grindstaff's 2001 judgment entry of conviction was entered into evidence.[1]

{¶ 10} On cross-examination, Grindstaff challenged Robinson's ability to identify him as the individual pulled over on June 22, 2003. Robinson admitted that if he had not seen a

---

1. Grindstaff also entered a stipulation as to his conviction in the Warren County Court of Common Pleas for a fourth-degree felony OVI.

- 4 -

photo of Grindstaff prior to trial, he would not have been able to identify Grindstaff as the driver of the vehicle, as over ten years had passed since he had initially arrested Grindstaff. However, Robinson clarified that he was able to match the information obtained from Grindstaff when he was arrested in 2013 to the information obtained from the driver of the Ford truck on June 22, 2003. Robinson testified that the date of birth and social security numbers were the same, allowing him to opine that "[t]en years later I can * * * say that's the man that I arrested."

{¶ 11} During cross-examination, Robinson admitted that he had not observed any erratic driving or any other visual signs of impairment during the short time he followed Grindstaff on June 22, 2003. Further, Grindstaff's method of pulling the vehicle over did not indicate any signs of impairment. Robinson did not observe Grindstaff fumbling or struggling to hand over his identification and registration, and Grindstaff did not slur his speech. As for his administration of the field sobriety tests, Robinson admitted that it was possible for an individual to have nystagmus and fail the HGN test even though the individual had not been drinking. Robinson also admitted that his report from the June 22, 2003 traffic stop focused on the incorrect things Grindstaff did during the walk and turn test and the one-leg stand test, and did not mention those aspects of the tests that Grindstaff properly performed.

{¶ 12} Following Robinson's testimony, Bradley testified that he is the corrections officer in charge of the inmate phone system for the Clermont County Sheriff's Office. Bradley explained that while Grindstaff was awaiting trial, his jail phone calls were recorded, and copies of the recordings were made pursuant to the state's request. At this time the state, over Grindstaff's objection, entered into evidence a recording of a phone call Grindstaff made on March 23, 2013. During this call, Grindstaff and an unidentified male and female discussed his 2003 arrest for OVI. The state also entered into evidence certified copies of documents pertaining to Grindstaff's municipal court case. Specifically, the state entered

copies of a June 26, 2003 judgment entry dismissing the misdemeanor OVI charge and a bench warrant issued on July 10, 2003, for Grindstaff's failure to appear at the June 25, 2003 proceeding.

{¶ 13} Following the admission of the state's exhibits, the state rested and defense counsel made a Crim.R. 29 motion for acquittal, which was denied by the trial court. Grindstaff rested his defense without calling any witnesses, closing arguments were held, and the case was submitted to the jury. Over Grindstaff's objection, the trial court provided the jury with a consciousness of guilt jury instruction.

{¶ 14} The jury returned guilty verdicts on both counts and, with respect to the OVI count, found Grindstaff had previously been convicted of a felony OVI. Grindstaff was sentenced to a prison term of three years, of which 60 days was mandatory.

{¶ 15} Grindstaff now appeals, raising four assignments of error. For ease of discussion, we will address Grindstaff's third and fourth assignments of error together.

{¶ 16} Assignment of Error No. 1:

{¶ 17} THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE THE TELEPHONE CONVERSATION AND INSTRUCTING THE JURY AS TO CONSCIOUSNESS OF GUILT.

{¶ 18} In his first assignment of error, Grindstaff argues that his March 23, 2013 jail phone call should not have been introduced into evidence as it was not probative of flight. He further argues that a consciousness of guilt jury instruction should not have been given in this case as there was no evidence, absent the improperly admitted jail phone call, that he attempted to avoid apprehension.

**Admissibility of the Phone Call**

{¶ 19} At trial, over Grindstaff's objection, the state introduced into evidence Grindstaff's March 23, 2013 jail phone call. During the phone call, the following discussion

between Grindstaff and an unidentified male and female took place:

> [GRINDSTAFF]: I figured they just dropped it or whatever because, I didn't have no - - I never even thought anything about it. Hell, I can't believe this is happening.
>
> MALE VOICE: I wonder if that police officer that charged you - - caught you, is he still - - I wonder if he's still working for - -
>
> [GRINDSTAFF]: I don't have no idea, you know.
>
> MALE VOICE: Yeah.
>
> [GRINDSTAFF]: I don't.
>
> MALE VOICE: You didn't take the (inaudible) breath test, did you?
>
> [GRINDSTAFF]: Do what now?
>
> MALE VOICE: You didn't take no breath test or anything, did you?
>
> [GRINDSTAFF]: Huh-uh. No. Who's this attorney you're going after? I get a hundred thousand dollars?
>
> FEMALE VOICE: Well, that's only because you ran the last time, Keith.
>
> [GRINDSTAFF]: No.
>
> FEMALE VOICE: They don't want you to do that again.
>
> [GRINDSTAFF]: (Inaudible). I mean from 2003. It took (inaudible) to know that.
>
> FEMALE VOICE: From 2003?
>
> [GRINDSTAFF]: Yes.
>
> FEMALE VOICE: That's been ten years almost. I thought it was 2004 when you got that?
>
> [GRINDSTAFF]: This is an '03 DUI. Now this is the one that I was worried about, you know what I mean? And they didn't - - the Grand Jury didn't I guess indict me until '04.

{¶ 20} Grindstaff had objected to the admission of the jail phone call on the basis that

the phone call was not probative of flight as he expressly denied having "ran the last time" during the phone call. Grindstaff further argued that there was no evidence he fled or attempted to flee the scene or failed to heed the signal of the police officer when he was pulled over. The state, on the other hand, argued Grindstaff's failure to appear in the municipal court case was evidence of flight, and the jail phone call was supporting evidence of flight as Grindstaff's statements during the course of the phone call indicated why he did not appear. That is, he was "worried about" or otherwise afraid of the charges brought against him and wanted to avoid facing said charges. In admitting the phone call into evidence, the trial court ruled that flight can "occur immediately following the incident" or "in failing to appear for court hearings." The court further stated it did not "see anything terribly prejudicial" in admitting the phone call and believed the phone call was relevant as it "arguably shows that the Defendant ran in this case."[2]

**{¶ 21}** We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Boles*, 12th Dist. Brown CA2012-06-012, 2013-Ohio-5202, ¶ 14. "A reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *Id.*, citing *State v. Smith*, 12th Dist. Fayette No. CA2007-10-035, 2008-Ohio-5931, ¶ 33. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Id.* "It is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

---

2. From the transcript of trial, it is apparent that the admissibility of the jail phone call had been argued by the parties and addressed by the trial court at a pre-trial hearing. Grindstaff did not request the transcript for this pre-trial hearing. As such, our review of the issue is limited to the events and discussion that occurred at trial.

{¶ 22} We find that the trial court did not abuse its discretion in admitting the phone call into evidence. Evidence of flight is admissible to show consciousness of guilt. *State v. Eaton*, 19 Ohio St.2d 145 (1969), paragraph six of the syllabus, vacated in part on other grounds in 408 U.S. 935, 92 S.Ct. 2857 (1972); *State v. Oponski*, 8th Dist. Cuyahoga No. 8558, 2005-Ohio-4162, ¶ 6. "'It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.'" *Eaton* at 160, quoting 2 Wigmore on Evidence (3 Ed.) 111, Section 276. Flight does not have to be contemporaneous with the underlying offense to be admissible. *Oponski* at ¶ 6. "[F]light on the eve of trial can carry the same inference of guilt as flight from the scene." *Id.* at ¶ 7. *See also State v. Jones*, 2d Dist. Greene No. 2005-CA-01, 2005-Ohio-5910, ¶ 11 (holding that "a defendant's failure to appear for trial may indicate consciousness of guilt"). Moreover, evidence of a defendant's failure to appear for trial is admissible where it is probative of consciousness of guilt and the value of such evidence is not substantially outweighed by the danger of unfair prejudice. Evid.R. 403; *State v. Hagwood*, 11th Dist. Lake No. 94-L-016, 1995 WL 407221, * 6-7 (June 2, 1995).

{¶ 23} Here, the trial court properly admitted the phone call as relevant evidence because it tended to show Grindstaff's consciousness of guilt and, further, helped explain why Grindstaff's trial occurred ten years after the underlying offense took place. Under the facts of this case, the state was entitled to argue Grindstaff's failure to appear was tantamount to flight, concealment, or related conduct to avoid prosecution for his 2003 felony OVI offense. We are unpersuaded that the probative value of the phone call was substantially outweighed by the danger of unfair prejudice.

{¶ 24} Moreover, we find Grindstaff's argument on appeal that the phone call could not have been evidence of flight as he never actually left the area, but rather continued to "live

and work in the same Clermont County community" following his 2003 arrest to be without merit. While Grindstaff now contends that he continued to reside in Clermont County from the time of his underlying offense in 2003 to the time he was arrested and brought to trial in 2013, there was no evidence presented below demonstrating Grindstaff's whereabouts during this time period.

{¶ 25} Grindstaff also argues that the jail phone call could not be considered evidence probative of flight given the trial court's decision to reduce bond in this case from $100,000 to $25,000. He contends that had he been "engaged in a 9-year campaign to avoid apprehension his bond would not have been reduced [as] the State and the Court would not have risked it." We find that no merit to Grindstaff's argument. The fact that the trial court chose, in a separate, pretrial proceeding, to reduce Grindstaff's bond in in no way precluded the court from later concluding that the jail phone call was admissible at trial as evidence probative of flight. There is no indication in the record that the trial court had knowledge of the March 23, 2013 jail phone call at the time it reduced Grindstaff's bond.

{¶ 26} Accordingly, we find that trial court did not abuse its discretion in admitting the jail phone call into evidence.

**Consciousness of Guilt Jury Instruction**

{¶ 27} Grindstaff further argues that the trial court erred by giving the following jury instruction on consciousness of guilt:

> * * * Evidence has been elicited that the Defendant after being charged with a misdemeanor OVI offense related to the incident in this case ran for the purpose of suggesting that the Defendant fled or attempted to flee in order to avoid prosecution.
>
> The State has offered this evidence for the limited purpose of showing a consciousness of guilt on the part of the Defendant for the purpose of showing his guilt. It was not received, and you may not consider it for any other purpose. In considering this evidence, you should decide whether the evidence is credible and whether it shows that the Defendant fled or attempted to flee in

order to avoid prosecution.

> If you find that the evidence is credible, you should consider that there may be other innocent reasons to explain the Defendant's conduct. If you find that the evidence is credible, and you find that the Defendant's conduct was not motivated by consciousness of guilt, or if you are unable to determine the Defendant's motivation, you may not consider this evidence for any purpose. However, if you find that the evidence is credible and you find that the Defendant's conduct was motivated by consciousness of guilt, you may consider this evidence in determining whether or not the Defendant is guilty of the offense as charged.

> You will determine what weight if any to be given to this evidence.
> * * *

{¶ 28} Jury instructions must contain "all matters of law necessary for the information of the jury in giving its verdict." R.C. 2945.11. "The trial court should instruct the jury if the proposed instruction is a correct statement of law, applicable to the facts in the case, and reasonable minds could reach the conclusion sought by the specific instruction." *State v. Pringle*, 12th Dist. Butler Nos. CA2007-08-193 and CA2007-09-238, 2008-Ohio-5421, ¶ 51, citing *State v. Lawson*, 12th Dist. Butler No. CA99-12-226, 2001 WL 433121, *8 (Apr. 30, 2001). An appellate court will review the trial court's decision to include a requested jury instruction based on an abuse of discretion. *Id.*; *State v. Barnette*, 12th Dist. Butler No. CA2012-05-099, 2013-Ohio-990, ¶ 39.

{¶ 29} A jury instruction on consciousness of guilt based upon the flight of the accused is appropriate when supported by sufficient evidence in the record. *State v. Wilson*, 3d Dist. Allen No. 1-09-64, 2010-Ohio-2294, ¶ 9; *State v. Craig*, 8th Dist. Cuyahoga No. 94455, 2011-Ohio-206, ¶ 30. A defendant's failure to appear at trial is evidence that a trial court may consider when determining whether to provide a consciousness of guilt jury instruction. *Jones*, 2005-Ohio-5910 at ¶ 11; *Hagwood*, 1995 WL 407221 at *7.

{¶ 30} Here, evidence was presented that Grindstaff failed to appear in municipal court

on June 25, 2003 to face the charges that resulted from the June 22, 2003 traffic stop. Evidence was also introduced, through the jail phone call, that Grindstaff's failure to appear in the municipal court in 2003 may have been intentional, as Grindstaff may have fled because he was "worried about" facing another OVI charge. Given this evidence, a consciousness of guilt jury instruction was appropriate.

{¶ 31} Further, the language utilized by the trial court in giving the consciousness of guilt instruction was proper as the instruction was substantially similar to the instruction set forth in *Ohio Jury Instructions*, CR Section 409.13 (Rev. Aug. 17, 2005), was clearly neutral in its effect, and only permitted, not required, the jury to draw the conclusion that Grindstaff displayed a consciousness of guilt by failing to appear in 2003. *See, e.g., Wilson*, 2010-Ohio-2294 at ¶ 10; *State v. Shepard*, 10th Dist. Franklin No. 07AP-223, 2007-Ohio-5405, ¶ 8; *Jones*, 2005-Ohio-5910 at ¶ 14. The instruction specifically provided that it was up to the jury to determine whether Grindstaff actually fled and, if so, whether the flight was motivated by guilt or some other innocent reason existed for the flight. Under the facts of this case, we find that the trial court's consciousness of guilt jury instruction was proper and not an abuse of the trial court's discretion.

{¶ 32} Accordingly, Grindstaff's first assignment of error is overruled.

{¶ 33} Assignment of Error No. 2:

{¶ 34} APPELLANT'S RIGHT TO A FAIR TRIAL WAS PREJUDICIALLY AFFECTED BY IMPROPER REMARKS MADE BY THE STATE OF OHIO DURING CLOSING ARGUMENT.

{¶ 35} In his second assignment of error, Grindstaff contends that the prosecutor made statements during closing arguments that prejudiced his right to a fair trial.

{¶ 36} For a conviction to be reversed on the basis of prosecutorial misconduct, a defendant must prove that the prosecutor's comments were improper and that they

- 12 -

prejudicially affected the defendant's substantial rights. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. "The focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon culpability of the prosecutor." *State v. Olvera-Guillen*, 12th Dist. Butler No. CA2007-05-118, 2008-Ohio-5416, ¶ 27, citing *State v. Hill*, 75 Ohio St.3d 195, 203 (1996). "Prosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial." *Id.*, citing *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984).

{¶ 37} At trial, defense counsel objected to the following statement by the prosecutor:

> [STATE]: Finally, remember Officer Robinson isn't just out there to get anybody he can get. He testified under oath that when people have passed field tests in his presence, he's let them go home. [Defense counsel] made a big deal of the NHTSA [National Highway Traffic Safety Administration] manual. But he could not point out one thing Officer Robinson did wrong when giving instructions for the horizontal gaze nystagmus, the one-leg stand, or the walk-and-turn. *Instead, he relied on the fact that it was ten years ago, a problem created by his own client.*"
> (Emphasis added.)

Defense counsel argued that by commenting, "Instead, he relied on the fact that it was ten years ago, a problem created by his own client," the prosecutor improperly used Grindstaff's alleged "flight" to place the blame on Grindstaff for the fact that the evidence in the case was over ten years old. Defense counsel asserted that the prosecutor's comments were improper given the trial court's instruction that Grindstaff's "flight" could only be considered for the limited purpose of showing his consciousness of guilt. In response to the objection, the state argued it was merely responding to defense counsel's closing argument, wherein defense counsel challenged Robinson's testimony and memory of events by stating, "Well, how much weight do we give to testimony that's from 10 years ago?" The trial court overruled defense counsel's objection, finding that the prosecutor was merely "responding to what [defense counsel] said" in his closing argument.

{¶ 38} We find that the trial court properly overruled defense counsel's objection. As we have previously recognized, "[a] prosecutor can respond to issues raised by an accused" during closing arguments. *State v. Sprauer*, 12th Dist. Warren No. CA2005-02-022, 2006-Ohio-1146, ¶ 20, citing *State v. Awkal*, 76 Ohio St.3d 324, 336 (1996). Once defense counsel "opened the door" to the "staleness" of the evidence, the prosecution was permitted to comment on why the evidence was just now being presented, ten years after the initial traffic stop. *See id.*; *State v. McCuller*, 8th Dist. Cuyahoga No. 86592, 2006-Ohio-302, ¶ 27. We thus conclude that the prosecutor's comments were proper and did not affect Grindstaff's right to a fair trial.

{¶ 39} Grindstaff's second assignment of error is, therefore, overruled.

{¶ 40} Assignment of Error No. 3:

{¶ 41} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT BY FAILING TO GRANT DEFENDANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL BECAUSE THE STATE FAILED TO ESTABLISH EACH MATERIAL ELEMENT OF THE OFFENSE BEYOND A REASONABLE DOUBT.

{¶ 42} Assignment of Error No. 4:

{¶ 43} THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY ON THE JURY'S VERDICT BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 44} In his third and fourth assignments of error, Grindstaff contends the trial court erred by denying his Crim.R. 29(C) motion for acquittal on the OVI charge as the state presented insufficient evidence that he was impaired at the time he was operating his motor vehicle. He further argues that his OVI conviction was against the manifest weight of the evidence as the evidence presented at trial "lacked the high degree of probative force" necessary to sustain his conviction for driving while impaired.

{¶ 45} Crim.R. 29(C) permits a trial court, upon motion, to set aside a guilty verdict and enter a judgment of acquittal. *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 9 (12th Dist.). "This court reviews a trial court's decision on a Crim.R. 29(C) motion for acquittal using the same standard as that used to review a sufficiency-of-the-evidence claim." *Id.*; *State v. Clements*, 12th Dist. Butler No. CA2009-11-277, 2010-Ohio-4801, ¶ 17; *State v. Moshos*, 12th Dist. Clinton No. CA2009-06-008, 2010-Ohio-735, ¶ 26. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 46} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State*

*v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26.  An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal.  *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387.  Furthermore, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency."  *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

**{¶ 47}** Grindstaff was convicted of a third-degree felony OVI in violation of former R.C. 4511.19(A)(1), which required the state to prove Grindstaff operated a motor vehicle while under the influence of alcohol, a drug of abuse, or a combination of them and had a prior felony OVI conviction.  Grindstaff contends the state failed to meet its burden as it produced insufficient evidence that he was driving "impaired."  Specifically, Grindstaff contends that as his driving and stopping sequence showed no signs of impairment, he showed no signs of impairment in retrieving his identification and registration information, he denied having consumed any alcohol, and his speech was not slurred, the manifest weight of the evidence established that he was not operating a vehicle while under the influence of alcohol on June 22, 2003.

**{¶ 48}** After reviewing the entire record, weighing inferences, and examining the credibility of witnesses, we find that Grindstaff's OVI conviction was not against the manifest weight of the evidence and was supported by sufficient evidence.  The state presented testimony and evidence from which the jury could have found all the elements of OVI, including the challenged "impairment" element, proven beyond a reasonable doubt.

**{¶ 49}** At trial, Robinson testified that at the time he pulled Grindstaff over on June 22, 2003, Robinson had been an officer for over two years, had been trained in detecting impairment and administering OVI tests, and had made approximately 200 prior OVI arrests.

During the course of the traffic stop, Robinson observed Grindstaff's bloodshot, glassy eyes and smelled such a strong odor of alcohol on Grindstaff's breath that it overpowered the tobacco Grindstaff was chewing. Robinson also testified that Grindstaff failed all three field sobriety tests administered that morning. With respect to the HGN test, Robinson observed a lack of smooth pursuit in the movement of Grindstaff's eyes and Grindstaff presented all six cues of impairment during the test. Grindstaff also failed the one-leg stand test as he was unable to keep his leg elevated or maintain his balance. During the walk and turn test, Grindstaff could not take nine heel-to-toe steps while balancing on a flat line and could not pivot to change directions as instructed by Robinson. Based on his observations and Grindstaff's failure to properly perform the field sobriety tests, Robinson opined that Grindstaff was under the influence of alcohol and, therefore, should not have been operating a motor vehicle on June 22, 2003.

{¶ 50} Robinson also testified at trial that Grindstaff refused to take a breath test and did not have an independent chemical test performed. *See State v. Free*, 12th Dist. Clermont No. CA2005-04-023, 2006-Ohio-1436, ¶ 19, citing *State v. Wargo*, 11th Dist. Trumball No. 96-T-5528, 1997 WL 703373, * 4-5 (Oct. 31, 1997) (holding that under certain circumstances, a trier of fact may consider a defendant's refusal to submit to a chemical test as evidence in deciding whether the defendant is under the influence of alcohol). Evidence was also submitted demonstrating that although Grindstaff was summoned to appear in municipal court to face charges arising out of the June 22, 2003 traffic stop, Grindstaff did not appear and a bench warrant was issued. When Grindstaff was apprehended in 2013, Robinson was able to identify Grindstaff by using Grindstaff's social security number and date of birth and matching records from 2013 to records from 2003. Finally, evidence was admitted regarding Grindstaff's prior, 2001 felony OVI conviction in the Warren County Court of Common Pleas.

{¶ 51} Given the above-mentioned evidence, we find that the trier of fact did not lose its way or create such a manifest miscarriage of justice that the OVI conviction must be reversed. The manifest weight of the evidence demonstrates that Grindstaff was operating a motor vehicle while under the influence of alcohol. Although Robinson admitted during cross-examination that Grindstaff's driving was not erratic and Grindstaff showed no signs of impairment in his stopping sequence or when retrieving his identification and registration, such testimony did not mean that Grindstaff was not driving impaired. "[A] defendant's driving need not be erratic or in violation of a traffic law to be found guilty of driving under the influence." *State v. Evans*, 12th Dist. Warren No. CA2009-08-116, 2010-Ohio-4402, ¶ 17. A defendant is properly convicted of OVI where the evidence presented at trial demonstrates the defendant's actions, reactions, conduct, movements, or mental processes have been impaired by the effect of alcohol. *See id.*

{¶ 52} The jury, as the trier of fact, was in the best position to weigh the evidence and judge the credibility of the witnesses on the issue of whether Grindstaff was operating his vehicle while under the influence of alcohol. "[A] conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Williams*, 12th Dist. Warren No. CA2012-08-080, 2013-Ohio-3410, ¶ 35.

{¶ 53} Accordingly, we find Grindstaff's OVI conviction was not against the manifest weight of the evidence and was also supported by sufficient evidence. *See Jones*, 2013-Ohio-150 at ¶ 19. The trial court, therefore, did not err in denying Grindstaff's Crim.R. 29 motion for acquittal.

{¶ 54} Grindstaff's third and fourth assignments of error are overruled.

{¶ 55} Judgment affirmed.

RINGLAND, P.J., and M. POWELL, J., concur.